### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1856, AT BOSTON.

### [CONTINUED FROM VOLUME V.]

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW, } Justices.
Hon. BENJAMIN F. THOMAS,
Hon. PLINY MERRICK.

## COMMONWEALTH *vs.* EDWARD H. WILLIAMS.

The provision of *St.* 1852, *c.* 322, § 12, that, in prosecutions for common selling of spirituous and intoxicating liquors, delivery in or from any building or place, other than a dwelling-house, "shall be deemed *prima facie* evidence of a sale," is constitutional and valid. THOMAS, J. dissenting.

INDICTMENT on *St.* 1852, *c.* 322, § 12, for being a common seller of spirituous and intoxicating liquors. At the trial in the municipal court, at January term 1855, there was evidence tending to prove deliveries of such liquor from the defendant's shop

in South Boston to various persons at different times ; but there was no evidence that any of it had been paid for.

The defendant contended " that the mere delivery of spirituous or intoxicating liquors in manner aforesaid, without evidence of payment being made therefor by the purchasers thereof, was not conclusive, nor *prima facie* evidence of sale by the defendant, and that it was not competent for the legislature to enact it to be so ; but was merely evidence to be considered by the jury in connection with the other facts of the case."

But *Briggs,* J. refused so to rule ; and instructed the jury, " that the delivery, by the defendant or his clerk, servant or agent, of spirituous or intoxicating liquors in his place of business, the same not being a dwelling-house, without any evidence of payment therefor, was *prima facie* evidence of sale by said defendant, upon which the jury might find a verdict against him, unless explained or controlled by other evidence." The defendant, being found guilty, alleged exceptions.

*S. J. Thomas,* for the defendant, cited Declaration of Rights, arts. 12, 18, 30 ; *Hardaway* v. *Manson,* 2 Munf. 230 ; *Rickman's case,* 2 East P. C. 1035 ; *Rex* v. *Fuller,* Russ. & Ry. 308 ; Wills Circ. Ev. 72 ; 1 Greenl. Ev. §§ 14–34 ; *Frost* v. *Brown,* 2 Bay, 133 ; 1 Phil. Ev. (3d ed.) 441 ; *Delano* v. *Bartlett,* 6 Cush. 365 ; *Commonwealth* v. *Kimball,* 24 Pick. 374 ; *Commonwealth* v. *Dana,* 2 Met. 340.

*J. H. Clifford,* (Attorney General,) for the Commonwealth.

MERRICK, J. The ruling of the presiding judge, to which exception is taken, was stated nearly in the words and quite in accordance with the sense and meaning of the statute, under which the defendant stands indicted. This he does not controvert or deny. But he complains that the particular clause in the statute, which declares that the delivery of spirituous liquor, in any place other than a dwelling-house, shall be deemed *prima facie* evidence of a sale, was recognized as a valid and obligatory enactment, and allowed to have a corresponding force and effect. He contends, on the contrary, that this clause ought not to have been regarded or treated as a subsisting law. He insists that it is unconstitutional and void

because it is an unreasonable provision; contrary to the rules and principles of the common law; an encroachment by the legislature upon the judicial department of the government; and is, in effect, subversive of the right of trial by jury.

We cannot find in these suggestions, after examining the basis upon which they rest, any sufficient reason for declaring this provision of the statute unconstitutional and void. The ample authority conferred upon the legislature to make, ordain and establish all manner of wholesome and reasonable orders, laws and statutes, which it shall judge to be for the good and welfare of the Commonwealth, necessarily invests that department of the government with the right of determining conclusively upon the propriety and reasonableness of all provisions which are not in some way repugnant to the Constitution. And it possesses to the same extent the power to change, at its pleasure, all existing laws, whether they are in force as part of the common law or by virtue of any previous enactment. Const. of Mass. *c.* 1 § 1, art. 4; *c.* 6, art. 6. The particular provision in the *St.* of 1852, *c.* 322, § 12, to which the defendant objects, cannot therefore be rejected as inoperative and void, merely because it may be thought to have been an inexpedient, an unwise, or an unreasonable act of legislation, or because it is in fact the substitution of a new rule of evidence in the place of that which was before the rule of the common law.

Nor does it appear that the establishment of this new rule of evidence is in any degree the result of judicial, instead of legislative action; or that it does in any way infringe upon the indisputable right of the accused to have his guilt or innocence ascertained, and the charge made against him passed upon, by a jury. The statute only prescribes, to a certain extent, and under particular circumstances, what legal effect shall be given to a particular species of evidence, if it stands entirely alone and is left wholly unexplained. This neither conclusively determines the guilt or innocence of the party who is accused, nor withdraws from the jury the right and duty of passing upon and determining the issue to be tried. The burden of proof remains continually upon the government, to establish the accu-

sation which it makes. When a party is charged, under the twelfth section of the statute, with having been a common seller of spirituous liquor, he cannot be convicted unless three distinct and separate acts of sale by him are first fully proved; and the jury are to pass upon the question, whether that proof has been supplied. The only purpose and effect of the particular clause of the statute objected to are, to give a certain degree of artificial force to a designated fact, until such explanations are afforded as to show that it is at least doubtful whether the proposed statutory effect ought to be attributed to it; but the fact itself is still to be shown and established by proof sufficient to convince and satisfy the minds of the jurors. And if this proof is furnished, and the delivery of any quantity of spirituous liquor in a place other than a dwelling-house is fully shown, this will not be conclusive against the party charged with having made the sale of it. Making out a *prima facie* case does not change the burden of proof. This is only the result of that amount of evidence which is sufficient to counterbalance the general presumption of innocence, and warrant a conviction, if the fact so established be not encountered and controlled by other evidence, tending to modify its effect, or so to explain it, as to render the statutory inference from it too uncertain and improbable to be relied upon. *Commonwealth* v. *Kimball*, 24 Pick. 373. *Commonwealth* v. *McKie*, 1 Gray, 61.

It is not denied that the fact of delivery affords some presumption of a sale. Indeed it is the special ground of the defendant's complaint, that the presiding judge did not leave to the jury to determine what effect ought to be allowed or given to that fact, after it had been proved. Ordinarily, that would be the proper course; and, but for the provision of the statute under consideration, would certainly have been so in this instance. Still delivery of property always affords, to a greater or less extent, presumptive evidence of its sale. In many cases which might easily be supposed, proof of the delivery of the thing alleged to have been sold would, when left unexplained, be readily received as convincing evidence of its sale; as where garments, or articles of daily domestic consumption, are delivered

by a tradesman or his servants at the dwelling-house of the receiver. But the particular circumstances, attending the delivery of any article of property whatever, are usually very material to a full and correct understanding of its object, purpose and import; and those circumstances, when fully known, can hardly fail so far to qualify and control the presumption arising from the naked fact of a delivery, as to disclose whether it was the result and consummation of a sale, or of a gift, or of a loan, or of a restoration of property which had been temporarily possessed and used with the consent of its owner.

In view of the well known reluctance of parties engaged in the traffic of spirituous liquors, to divulge the real circumstances attending the sale or transfer of articles of that description, the legislature have deemed it expedient, the more freely and effectually to enforce observance of a law deemed to be of high public concernment, to provide that these circumstances shall not constitute an indispensable portion of the proof essential to establish the fact of a sale; but leave them to be developed, at their own pleasure and election, by the parties charged with having made it. But, if the government, in proving the delivery of any quantity of spirituous liquor, in support of a prosecution for an alleged violation of the law, prove also, as it must almost necessarily do, as a part of the transaction, the circumstances attending it, then those circumstances immediately become evidence in the case, to be weighed and considered by the jury; and although the naked delivery would be *prima facie* evidence of the sale, and so, indirectly, of the guilt of the accused, yet this proof of it being accompanied by evidence of the manner in which the delivery occurred, and of the surrounding circumstances, he is not to be convicted, unless upon just consideration of all the facts thus disclosed and placed before the jury, they are satisfied, beyond reasonable doubt, of his guilt.

It is no new thing in the history or administration of the law, that peculiar and artificial force is given or attributed to particular facts, or series of facts, as means and instruments of legal proof. This may be seen in many of the rules of evidence which prevail by the common law, and in others which derive

1 *

their force from legislative acts. These then are conclusive pre-sumptions, which, from motives of public policy, or for the sake of greater certainty, or for the promotion of the peace and quiet of the community, have been adopted by common consent. Sometimes the common consent, by which this class of pre-sumptions is established, is declared through the medium of the judicial tribunals, and thus becomes a part of the common law of the land. And sometimes it is expressly declared by the direct authority of the legislature in statutes duly enacted. 1 Greenl. Ev. §§ 16, 17, *& notes.* " Certainly," said Chief Jus-tice Parsons, " the legislature may prescribe, and frequently have prescribed, rules of evidence, by which parties must support their acknowledged rights." *Kendall* v. *Kingston,* 5 Mass. 534.

The legislation of this commonwealth affords many instances in which such peculiar and artificial force and significance have been given to particular facts as evidence, both in civil and crim-inal cases, by the special provisions of different statutes. Thus, very early after the adoption of the Constitution, it was enacted, that in all prosecutions and suits, whether civil or criminal, against persons for cutting out, altering or destroying the marks of the owner upon any logs or lumber, the possession of the logs or lumber by the accused should be presumptive evidence of his guilt, and the burden of proof thrown on him to discharge him-self. *St.* 1793, *c.* 42, § 6. That law was reënacted, as part of the revised statutes, and is still in force. Rev. Sts. *c.* 52, § 4. So upon the trial of an indictment against a party for the offence of selling, or of having in his possession with intent to sell, any fictitious lottery ticket, or any share or certificate there-of, it is provided that any such ticket, share or certificate thereof shall be deemed to be false, spurious and fictitious, unless he shall prove the same to have been duly issued by the authority of some legislature within the United States. *St.* 1833, *c.* 148, § 3. Rev. Sts. *c.* 132, § 6. So also, in either civil or criminal proceedings for a violation of the several provisions of *c.* 53 of the Rev. Sts., it was subsequently enacted, that the legal presumption from the possession of certain birds, during the season when it was unlawful to kill or take them in this com

monwealth, should be that they were killed or taken in this com-monwealth; and that if the defendant wished to prove that such birds so found in his possession were killed or taken without the limits of this commonwealth, the burden of proof thereof should be upon him. *St.* 1849, *c.* 158, § 1. Again: in prosecu-tions for the sale of spirituous liquors, under former statutes, it was enacted that the legal presumption should be that the defendant had not been licensed; and that if he relied upon a license in his defence, it should be incumbent on him to prove that fact by the production of an attested copy of the record of his license. *St.* 1844, *c.* 102, § 1. Another instance, in which a special and peculiar effect is given to a designated species of evidence, may be seen in the enactment, that printed copies of the statute laws of any other of the United States, purporting to be published by authority, shall be treated in this state, in all courts of law, and on all occasions, as *prima facie* evidence of those laws. Rev. Sts. *c.* 94, § 59.

Some of these statutes have been long in force; and one of them in particular, that in relation to licenses for the sale of spirituous or fermented liquors, has been well known to have been often availed of by public prosecutors. Yet the constitu-tionality of none of them has ever been brought into question; or, if their validity has been sometimes doubted, the doubt has not been sufficient to induce any interested party to bring the question before the tribunal of the last resort for final adjudica-tion. See *Commonwealth* v. *Kelly,* 10 Cush. 69.

These various and repeated statutory provisions are entitled to some consideration, as proofs of the legitimate power of the legislature, when, after a long period of time during which there has been a common and general acquiescence in similar acts of legislation, their competency and constitutional right to enact such laws are at length denied. But whether the particular pro-vision in the *St.* of 1852, *c.* 322, that the delivery of spirituous liquor in places other than a dwelling-house shall be deemed to be *prima facie* evidence of a sale, is considered in this aspect alone, or in view of the rules established by the common law, in reference to the articles of the Constitution, referred to in the

argument for the defendant, a majority of the court can see no sufficient ground upon which it can be declared to be inoperative and void.

THOMAS, J. The question raised by the exceptions is the validity of a provision of the act of 1852, *c.* 322, entitled " An act concerning the manufacture and sale of spirituous and intoxicating liquors." The provision is a part of the twelfth section of that act, and is as follows : " And delivery in or from any store, shop, warehouse, steamboat or other vessel, or any vehicle of any kind, or any building or place other than a dwelling house, shall be deemed *prima facie* evidence of a sale."

What is meant by "delivery" in this clause is plain. A comparison of this provision with that which immediately follows shows that simple, manual delivery is intended ; a delivery not qualified by, or deriving its character from other acts. " And a delivery in or from a dwelling-house, with payment or promise of payment, either express or implied, on, before or after such delivery, shall be held to constitute a sale within the meaning of this act." The statute distinguishes the delivery in a dwelling-house with payment or promise of payment, express or implied, from the simple delivery or transmutation of possession in any place other than a dwelling-house. That is to say, in a place not a dwelling-house it is enough to show mere delivery, without proof of payment or promise of payment, express or implied, on, before or after the sale. And the provision is, that such simple delivery shall be presumptive, that is, if uncontrolled, sufficient evidence not only of a change of property, but that such change has been effected by a contract of sale.

The statute recognizes spirituous liquors as property. They are so, independently of the statute. They could not be the subject of sale, if they were not property. Every man has a right to keep them. Every man has a right to give them away. The keeping and the giving are, in the eye of the law, perfectly innocent acts. It is only the sale in certain modes, that the law forbids and punishes.

A sale is a transfer of property from one man to another, in consideration of some price, or recompense in value. There

must be a contract or agreement, express or implied, for value, and a delivery of the property in execution of such contract or agreement. The agreement to sell is not a sale without the delivery. The delivery is not a sale; it is nothing without the agreement, express or implied, for value. 5 Gray, 103.

Delivery is one of the elements of a sale. It is also one of the elements of a gift or bailment. It is equally consistent with the one as with the other. The delivery, then, of spirituous liquor is an act perfectly innocent. It is so at common law. The statute leaves it so. Yet this statute makes an act, wholly innocent in itself, *prima facie* evidence, that is, if uncontrolled, competent and sufficient evidence of the commission of a crime. Upon the proof of a fact, equally consistent with the innocence, as with the guilt of the accused, it infers and presumes his guilt. Upon the proof of an act which the law nowhere forbids or censures, and which is, in and of itself, without meaning, it takes from the accused the presumption of innocence, and calls upon him for his defence; his defence, not to the thing proved, but to the thing not proved, the thing the government has failed to prove, to wit, a sale. To say that a delivery is a sale, or that it is sufficient evidence of a sale, is, with entire respect be it said, a contradiction in terms. It is to say that, the presence of two elements being necessary to a given result, you satisfactorily establish that result by proof of the presence of one of those elements, and, what will not escape observation, the proof of the presence of the least material and significant of those elements; for delivery is common to gift, bailment and sale, and it is the agreement for price, or consideration of value, which gives character to the delivery and makes the sale.

It seems to me therefore that the provision is not only unreasonable and unjust, but that it is inconsistent with the object and purpose of the statute itself; confounding what under the act is innocent, with what it declares to be criminal, and making evidence of the innocent act proof of the commission of the criminal one.

The legislature have power to make all "reasonable and wholesome" laws, and upon the question of the wisdom, policy, or even

the justice of any act, their judgment must perhaps be regarded as conclusive. But a provision whose very terms are repugnant and selfcontradictory cannot be held to be "reasonable." It may be competent for the legislature to punish the mere act of delivery of spirituous liquor, though this would be inconsistent with its recognition as property. They might give their own definition to the word "sale," a definition inconsistent with its use at common law. But they have done neither of these. They use the word "sale" in its ordinary sense, as the provision as to sales in a dwelling-house clearly shows. They recognize the right of property, and the consequent right of transfer by gift, and then make an act, wholly consistent with what they permit, sufficient evidence of what they forbid.

But this provision is not only repugnant to the other provisions of the statute and unreasonable, using the word in its logical sense—against reason; but it is, in my judgment, invalid, because it substantially impairs the right or the value of the right of trial by jury.

It is plain that the value of the trial by jury, viewed as a constitutional right, would be greatly lessened if it were in the power of the legislature to take from the accused the presumption of innocence which attends him throughout the trial, which, throwing the burden of proof upon the government, never lifts it till all reasonable doubt of guilt is removed. If this presumption can be changed, if this burden can be satisfied, by the evidence of acts in themselves wholly indifferent and proving nothing but the want of proof, the Constitution saves the form only, and not the substance of the trial. If the legislature may say an innocent act is presumptive evidence of guilt, it would be only one step further in the same direction to make that presumption conclusive.

While it is within the province of the legislature to determine the sources of evidence, the modes of verification, who may or may not be competent witnesses, I am not prepared to say they may weigh and determine the quantity of evidence, which shall suffice to produce conviction in the mind of the judge or juror who tries a cause. But it seems to me an extreme exercise of

such power, to say to the jury of trials, that upon proof of one fact they shal. believe another, though in the nature of things there is no necessary, and, in the experience of men, no established connection between them. The statute not only directs the juror to draw a conclusion from a given fact, but it compels him to draw an unsound and illogical conclusion. There is a change in the possession of property. It may be the result of a gift, or the passing over to one of that which is his own. There are many lawful causes for which such change of possession may take place. But this clause of the statute says, in effect, that of all the ways in which the property may have passed from the custody of one man to that of another, the legal presumption shall be, that it passed in pursuance of a contract of sale, and that a contract which the law prohibits. Suppose a delivery is shown by A to B from a steamboat, railway car or stage coach; by one neighbor to another on the highway; by a physician to his patient in the office or place of business of the patient; what presumption of sale arises? To say the presumption is controlled by the surrounding facts, does not state the matter with accuracy; for no presumption arises, to be controlled. To say that, under such circumstances, a jury would never presume a sale, is to say the presumption sought to be established by the statute is wholly artificial, and that the mind refuses to give it force. Where the act proved is equally consistent with innocence or guilt, the presumption of innocence must stand. The plainest dictates of justice require it. The right of trial by jury includes it. A statute, which takes from the accused the shield of that presumption, essentially impairs that right.

Such a statute, if not strictly an exercise by the legislature of judicial power, within the prohibition of art. 30 of the Declaration of Rights, is the assertion of a power which, carried into full exercise, would take from one department of the judicial tribunal, the jury, its substantial, effective power.

It may be said, that the legislature have but given the force of a legal rule to one of those presumptions of fact which are founded upon general observation and experience. Presump-

tions of law, at the best, uncertain instruments in the investiga-
tion and discovery of truth, are especially dangerous in the
administration of criminal justice, when used to control or im-
pair the natural, fundamental, presumption of innocence. Their
effect is to give to evidence a technical force beyond its natural
efficacy in producing conviction. If the connection between
the fact proved and the fact to be inferred has been ascertained
by experience to be universal, or even general, the proof of the
existence of the one will have its natural force in producing a
belief in the existence of the other, and no artificial presumption
is necessary. Where the connection has not been established by
experience, to infer from the proof of one the existence of the
other by an inflexible, artificial rule, is to reason for the juror,
and to draw an inference for him, which, it may be, he cannot
draw, and which his reason rejects as inconsequential and un-
sound.

It is said that the act is sustained by legislative precedent.
A practice of the legislature, general and long continued, and
the acquiescence of the other departments of government and
of the citizen, may furnish a reasonable argument in favor of
the validity of a statute; taking care however that one step
over the line of the Constitution shall not be the excuse for a
second, and that for a third. On the question before us, the
precedents are few and unimportant.

A case often referred to in the criminal law is the *St.* of
21 Jac. 1, *c.* 27, which provided that if any woman should be
delivered of a child, which, if born alive, would be a bastard, and
endeavor privately to conceal its death, she should suffer death
as in case of murder, unless she could prove, by one witness at
least, that the child was actually born dead. See also Provincial
*St.* of 8 W. 3, Anc. Chart. 293. But that statute, unreasonable
as it was, did not say that the concealment should be conclusive
or presumptive evidence of murder, but that the mother so offend-
ing should " suffer death as in case of murder." The provincial
statute, happily, was repealed soon after the adoption of the
Constitution. *St.* 1784, *c.* 42. And the English statute by *St.*
43 G. 3, *c.* 58, § 3.

A statute which may be thought to have some analogy to the provision under discussion is that of 1844, *c.* 102, which enacts that, in all prosecutions for selling spirituous or fermented liquors without license the legal presumption shall be that the defendant has not been licensed, and if he relies on a license in his defence, it shall be incumbent on him to prove that fact, by an attested copy of the record of his license.

That statute is not strong enough to lift more than its own weight. But there is a difference between it and the provision of the *St.* of 1852; a difference certainly of degree, if not of principle. A sale is shown by the proofs, a sale illegal, except it has been made under a special grant and license of the government; of that grant or license the defendant has an attested copy, as the evidence of the right or power he exercises, distinct from that of his fellowcitizens. The law which clothes him with this special privilege says, if he would avail himself of it, he must be ready, whenever called in question, to prove it. It is a condition annexed to the grant or license, and he, who takes the license, takes it subject to this condition. So that, construing this provision with the statutes *in pari materia,* the effect is, that no person shall be allowed to sell spirituous liquor, unless, when called in question in relation thereto, he can prove a special license therefor.

I cannot say that the provision of the Rev. Sts. *c.* 132, § 6, is not open to the same objections as that before us. Section 5 of that statute makes it an offence for any person to make or sell, or have in his possession with intent to sell, any false or fictitious lottery ticket, knowing the same to be false or fictitious. Section 6 provides that, upon the trial of an indictment for such offence, any ticket, which the defendant shall have sold or offered for sale, shall be deemed to be false, spurious or fictitious unless the defendant shall prove the same to be true and genuine. The offence, under § 5, is the selling, or having with intent to sell, a false or fictitious ticket, knowing the same to be false or fictitious. Unless the government shows that the ticket sold, or held with intent to sell, is false or fictitious, and that the defendant knew it was false or fictitious,

no offence is made out. This burden, resting on the government, the statute shifts upon the defendant, calling upon him to establish his innocence before proof has been given of his guilt.

The validity of this provision has never, I believe, been affirmed by this court. The language of the court in *Commonwealth* v. *Dana*, 2 Met. 340, seems strongly to imply that the burden has not, in fact, been changed. It is worthy of remark, that the provisions of § 6, which were first enacted in the *St.* of 1833, *c.* 148, were not included in the report of the learned commissioners for revising the statutes, but were .added by the committee of the legislature.

The statute of 1849, *c.* 158, § 1, which provides that, if certain birds are found in one's possession within certain periods of the year, the presumption shall be that the birds were taken and killed within the limits of the Commonwealth, and the burden of proof shall be upon the accused to show it was not so, cannot be distinguished from that upon which we are called to pass. Nor is it necessary to do so.

It may be thought that this provision of the statute of 1852 finds countenance and support in the presumptions of fact known to the common law; for example, that which regards possession of the fruits of crime, recently after its commission, as presenting the evidence of guilt. But that is but a presumption of fact, that is to say, an argument, the effect and force of which are to be determined by the jury, and must be greatly affected by nearness of time and place. That, and the class of presumptions of fact to which it belongs, operate solely by their natural force, and the jury are not to convict, unless on the whole evidence they are satisfied of the truth of the fact charged.

For these reasons, I have not been able to concur in the opinion of the majority of the court, declaring this provision of the statute of 1852, *c.* 322, to be valid. Though the question is not of great practical moment, the provision having been greatly modified in the statute of 1855, *c.* 215, a just respect for the .egislature seemed to require that I should briefly state the grounds on which I hold the provision to be without the force of law.