# *Ex parte* Riley.

## *Petition for Discharge on Habeas Corpus.*

1. *Right to discharge.*—When a person has been committed to custody on a criminal charge, after a preliminary examination by a justice of the peace, and applies for a discharge on *habeas corpus*, ho is entitled to be discharged (Code, § 4781), unless the evidence shows that a criminal offense has been committed, and that there is probable cause for charging him with it.

2. *Obtaining money or property under fraudulent promise for performance of service; constituents of offense.*—A person who, having obtained money or other personal property under a written contract for the performance of any act or service, without just cause refuses to perform, or to return the money or property received, is not guilty of a criminal offense under the statute (Code, § 3812), unless he entered into the contract with the intent to injure or defraud his employer, and refused to perform with like intent.

3. *Same; proof of intent.*—The fraudulent intent, in such cases, can rarely be proved by direct evidence, but is matter of inference from the facts and circumstances developed by the evidence; but neither the jury to whom the case is submitted, nor the court on application for *habeas corpus*, is justified in indulging in mere conjectures, speculations or suspicions as to the intent, which are not supported by any visible or tangible act, expression or circumstance.

PETITION by Enoch Riley for the writ of *habeas corpus*, to procure his discharge from the custody of the sheriff of Tuskaloosa county, and the writ of *certiorari* to review the proceedings had before Hon. WM. G. COCHRANE, the judge of probate of Tuskaloosa county, who had refused to discharge the petitioner. The opinion states the facts.

HARGROVE & VAN DE GRAAFF, for the petitioner.

WM. L. MARTIN, Attorney-General, for the State.

WALKER, J.—The petitioner was committed after preliminary examination before a justice of the peace. When he was brought before the judge of probate upon *habeas corpus*, the prosecutor and all the witnesses who had testified on the preliminary examination were present and were examined. After such examination the probate judge made an order remanding the petitioner. He was entitled to be discharged from custody, if, on such examination, it appeared that no offense had been committed, or that there was no probable

cause for charging him therewith.—Criminal Code, § 4781; *Ex parte Champion*, 52 Ala. 311; *Ex parte Mahone*, 30 Ala. 49.

The petitioner is held for an alleged violation of section 3812 of the Code, which is in the following words: "Any person who, with intent to injure or defraud his employer, enters into a contract in writing for the performance of any act or service, and thereby obtains money or other personal property from such employer, and with like intent, and without just cause, and without refunding such money, or paying for such property, refuses to perform such act or service, must, on conviction, be punished as if he had stolen it." The effect of this statute is to provide for the punishment criminally of a certain class of frauds which are perpetrated by means of promises not meant to be kept. These frauds closely resemble those perpetrated by means of false pretenses or tokens, but are not punishable under the statute on that subject, as a false pretense is a false representation relating to some existing or past fact, and does not include a promise of something to be done in the future.—*Colly v. The State*, 55 Ala. 35. The ingredients of this statutory offense are: (1) a contract in writing by the accused for the performance of any act or service; (2) an intent on the part of the accused, when he entered into the contract, to injure or defraud his employer; (3) the obtaining by the accused of money or other personal property from such employer by means of such contract entered into with such intent; and (4) the refusal by the accused, with like intent, and without just cause, and without refunding such money, or paying for such property, to perform such act or service. This statute by no means provides that a person who has entered into a written contract for the performance of services, under which he has obtained money or other personal property, is punishable as if he had stolen such money or other personal property, upon his refusal to perform the contract, without refunding the money or paying for the property. A mere breach of a contract is not by the statute made a crime. The criminal feature of the transaction is wanting unless the accused entered into the contract with intent to injure or defraud his employer, and unless his refusal to perform was with like intent and without just cause. That there was an intent to injure or defraud the employer, both when the contract was entered into and when the accused refused performance, are facts which must be shown by the evidence. As the intent is the design, purpose, resolve or determination in the mind of the accused, it can rarely be proved by direct evidence, but must be ascertained by means of inferences

from the facts and circumstances developed by the proof. *Carlisle v. The State*, 76 Ala. 75; *Mack v. The State*, 63 Ala. 138. In the absence, however, of evidence from which such inferences may be drawn, the jury are not justified in indulging in mere unsupported conjectures, speculations or suspicions as to intentions which were not disclosed by any visible or tangible act, expression or circumstance.— *Green v. The State*, 68 Ala. 539.

In the present case, the petitioner entered into a written contract for the hire of his son, Ben Riley, a boy about sixteen years of age, to T. J. Counters, for the term of ten months, to begin on the 16th day of February, 1891, and to continue "until all lost time and all advances made him by said Counters during his term of service is worked out or paid in full by said Enoch Riley." It was provided that, if the boy should from any cause fail to render the service contracted for, the petitioner should serve in his stead. The contract embodied an acknowledgment by the petitioner of his receipt of sixty dollars paid and advanced to him by Counters. There was the further stipulation, "that in case the said Enoch should pay in cash all advances and for all time lost during said term of service, this contract to hold good only until the sixteenth day of December, 1891, but if not paid in full to hold good forever until paid." No money was actually paid to the petitioner when the contract was made; but the understanding was that he should be credited with the sum of sixty dollars upon an indebtedness due from him to a brother of T. J. Counters. Ben Riley was reluctant to enter the employment of Mr. Counters under the contract made by his father; but, on Counters' refusing to consent that he be hired to another person for wages which were to be paid to Counters, the boy did enter the service of the latter, pursuant to the contract, and remained in such service from about the 16th day of February, 1891, until the following August. During this time Counters made some advances to the boy, with the knowledge and approval of the father. The boy abandoned the service without the consent and against the directions of his father, the petitioner. Counters demanded that the boy should return, or else that the petitioner should himself come and work out the amount due under the contract. When this demand was made the petitioner did not comply with it, as he had to attend a crop which he was making on the land which he had rented for that year, but he made several efforts to effect satisfactory arrangements for the payment of what was due to Mr. Counters.

There is not a single circumstance in the case to indicate that the petitioner entered into the contract with any fraudu-

[Jackson v. The State.]

lent purpose. In the first place, the arrangement was, in fact, primarily for the payment of a past indebtedness. The petitioner realized nothing on it for himself. The only advances thereafter made were to the boy while he was working for Counters. Furthermore, all the evidence indicates that the petitioner did everything in his power to enable Counters to get the benefit of the boy's work. There is not a particle of proof that he advised, encouraged, consented to or connived at the boy's abandonment of the service. There is absolutely nothing shown against the petitioner, beyond his failure to serve in the boy's stead, when the latter, against the petitioner's commands, abandoned the employment of Counters after working for him six months. This failure, without more, was a mere breach of contract. All the circumstances point to the conclusion that the petitioner entered into the contract with the honest intention of having his son perform the service stipulated for. The making of the contract was not a trick, contrivance or device for getting money or other personal property. There is nothing in the evidence to suggest that, at the time the contract was entered into, the petitioner intended thereby to injure or defraud Counters. This essential element of the charge against him is wholly unsupported by proof. The court can not permit the lack of evidence on a material point to be supplied from the imagination of the jury. It is not the duty of the court to submit to the jury a criminal accusation in the absence of evidence tending to support it. The evidence in this case did not tend to show that there was any probable cause to charge the petitioner with the commission of any criminal offense, and he should have been discharged.

The writs of *certiorari* and *habeas corpus* will be awarded, unless the petitioner, when informed of this ruling, shall elect to renew his application before a court or judge of original jurisdiction.

*Certiorari* and *habeas corpus nisi* ordered.