# Bailey *v.* The State.

### *False Pretense and Fraud.*

(Decided June 3, 1909.   49 South. 886.)

1. *Constitutional Law; Due Process; Rules of Evidence.*—Section 4730, Code 1896, as amended by General Acts 1903, p. 345, and General Acts 1907, p. 636, is not violative of the due process clause of the Constitution of the United States, amendment No. 14, notwithstanding the rule of evidence then prevailing that a person may not testify as to his uncommunicated motive, purpose and intention, and notwithstanding the statute, does not lay down the facts constituting a just excuse.

2. *Same; Equal Protection.*—Such section (Sec. 4730, Code 1896) as amended, by the Acts of 1903 and 1907, is not violative of the 14th amendment of the Constitution of the United States, as denying to accused the equal protection of the law.

3. *Same; Imprisonment for Debt.*—Such Section (Section 4730, Code 1896) as amended, does not violate section 20, Constitution 1901, as being an imprisonment for debt; nor is it unconstitutional on the ground that it imposes involuntary servitude similar to the peonage system once prevailing in New Mexico.

APPEAL from Montgomery City Court.

Heard before Hon. W. H. THOMAS.

[Bailey v. The State.]

Alonzo Bailey was convicted of obtaining money under a contract in writing with the intent to injure or defraud his employer, and he appeals. Affirmed.

TROY, WATTS & LETCHER, and FRED S. BALL, for appellant.—In whatever language a statute may be framed its purpose must be judged by its natural and reasonable effect.—*Henderson v. New York,* 92 U. S. 259; *Fong v. U. S.,* 149 U. S. 729, cited in *Thomas v. The State,* 144 Ala. 77, did not authorize the creation of a prima facie rule of evidence. Witnesses are not permitted to testify as to their uncommunicated motives, belief or intention. —*McCormack v. Joseph,* 77 Ala. 236, and authorities there cited; *Holmes v. The State,* 136 Ala. 80. So, a defendant cannot thus make evidence for himself.— *Harkness v. The State,* 129 Ala. 71. It therefore follows that the amendment to the statute creating a prima facie rule of evidence denied to the defendant due process of law, and rendered it violative of the 14th Amendment.—*Harvey v. Elliott,* 167 U. S. 409; *Ex parte Wells,* Wheat. 518; *Clayatt v. U. S.,* 197 U. S. 202; *People v. Cannon,* 139 N. Y. 431; *Meadowcraft v. The People,* 163 Ill. 56. Having failed to prescribe what is a just excuse due process is also denied.—92 U. S. 214; 190 U. S. 127; 35 Fed. 866; 35 S. W. 129. The statute denies the equal protection of the law.—165 U. S. 160; 60 S. E. 20; 123 Fed. 671; 32 S. C. 123; *Harris v. The State,* 47 South. 341; *Carr v. The State,* 106 Ala. 35.

ALEXANDER M. GARBER, Attorney-General, and THOMAS W. MARTIN, Assistant Attorney-General, for the State.—The statute under consideration has been held good as against every question raised by the 6th ground taken against it.—*Bailey v. The State,* 48 South. 498; *State v. Vann,* 43 South. 357; *Thomas v. The State,* 144

Ala. 77; *McIntosh v. The State,* 117 Ala. 128; *Ex parte Riley,* 94 Ala. 82.

DENSON, J.—When this case was before us on a former appeal (*Bailey v. State,* 158 Ala. 18, 48 South. 498) two points were considered and decided in respect to the constitutionality of the statute (Gen. Acts 1907, p. 636) under which the defendant has been indicted, tried, and convicted. These points are: First: That on its face the purpose of the statute is to punish fraudulent practices, and not the mere failure to pay a debt, and, therefore, that the statute is not offensive to the twentieth section of the bill of rights, which provides that no person shall be imprisoned for debt; and, second, that it is within legislative competency to prescribe, as a rule of evidence, that the refusal or failure of a person, who enters into a contract such as is contemplated by the statute, to perform the act or service stipulated for, or to pay for the property obtained under such contract, shall be taken as prima facie evidence of the intent to defraud his employer. See authorities cited in the opinion promulgated on the last appeal.

On the present appeal the court is asked to consider whether or not the act prescribing the rule of evidence is violative of that part of the fourteenth amendment to the federal Constitution, in this language: "Nor shall any state deprive any person of life, liberty, or property, without due process of law."

Appellant's counsel, in support of the proposition that this constitutional provision is violated by the act, argue in the brief that, on account of the rule of evidence prevailing in this jurisdiction, to the effect that a person may not testify as to his uncommunicated motives, purposes, or intention, defendant was unable to show by his own testimony that he entered into the contract in good

faith, and that he rescinded the contract for reasons other than those constituting crime, and, therefore, that the "due process" clause of the Constitution is violated.

The rule of evidence is as stated by counsel, but the conclusion of counsel, from their stated premises, it seems to us is a non sequitur. Because a person may not testify, in so many words, that he did not intend a certain result, or that his motive was not to defraud, by no means cuts him off from proving such a negative by the circumstances attending his acts or utterances, which may give point or color to the same or supply the true intent or motive. And so the accused is not excluded from giving testimony, from offering evidence, from being heard, nor from setting up any lawful defense.

Again, it must be borne in mind that the rule of evidence fixed by the statute does not make it the duty of the jury to convict on the evidence referred to in the enactment, if unrebutted, whether satisfied thereby of the guilt of the accused beyond a reasonable doubt or not. On the contrary, with such evidence before them, the jury are still left free to find the accused guilty or not guilty, according as they may be satisfied of his guilt or not, by the whole evidence.

It is difficult to perceive how it can be reasonably maintained that the act or acts which the statute makes prima facie evidence of the intent have no relation to the crime; nevertheless appellant's counsel assert that they have no such relation. But this assertion they do not fortify with argument, and even a casual reading of the statute will show the entire lack of foundation for the statement.—Gen. Acts 1907, pp. 636, 637.

Aside from our own decisions and those of courts of last resort in other jurisdictions in the affirmative, it would seem that the right of the legislature to enact the rule of evidence is put at rest by the Supreme Court of

the United States, in *Fong Ye Ting's Case*, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905, where the court held it to be within the acknowledged power of every legislature to prescribe the evidence which shall be received, and the effect of that evidence, in the courts of its own government. See, in this connection, the well-reasoned case of *Meadowcroft v. People*, 163 Ill. 56, 45 N. E. 303, 35 L. R. A. 176, 54 Am. St. Rep. 447.

The next argument brought forward to support appellant's contention is that the amended statute denies "due process of law," in that there is an attempted substitution of the judicial department of the state government for the legislative. The brief attempts to clarify this statement, and concludes with the assertion that "there is no criterion laid down by the statute by which one can regulate his actions so as to know that he is abiding by the law." In other words, the contention is that the legislature should, in the enactment, have defined "just excuse"—should have laid down the facts going to make up or to show, in every case, whether the accused was or was not "without just excuse."

It seems to us that, if the Legislature had attempted this, the result would have been more restrictive upon the defendant than was the leaving of the determination of this question to court and jury; for "just cause" is defensive matter brought forward by the accused, necessarily depending, for sufficiency, upon the peculiar facts of each case, and the wider the latitude in respect thereto, the more advantageous the situation of the accused. —*Owen's Case*, 74 Ala. 401. But we cannot appreciate the force of the contention that there is in this a deprivation, or even a tendency to show deprivation, of due process of law.

The next insistence is that the statute denies to the accused the equal protection of the laws, and, therefore,

that it is obnoxious to the last clause of the fourteenth amendment to the Constitution. The first point made under this insistence goes upon the theory that, as the statute applies only to persons who enter into contracts in writing for the performance of service, or for the renting of land, etc.—(*Harris' Case,* 156 Ala. 158, 47 South. 341), it is class legislation and falls within the condemnation of the clause of the Constitution last referred to.

If this statute referred to a particular class of individuals, in the sense of the term in which, as by the proof made and arguments advanced, counsel for accused seem to think it was used, to-wit, to negro laborers and negro tenants, then we should not hesitate to declare the enactment void. But no such interpretation can be invoked by any canon of construction; nor can it be supported by reason or by reference to the history of the statute. On the contrary, the statute, on its face, is leveled against "any person who, with intent to injure or defraud his employer," etc. There is absolutely no qualifications as to the persons made amenable to the statute, by reference to race, color, or condition, nor is there the remotest hint at such a limitation. True, according to the *Harris Case, supra,* it is confined to persons who contract to perform service and who contract to rent lands; but the burden of the statute falls with equal weight upon all such persons—that is, upon all persons similarly situated—and it is therefore not class or discriminative legislation in the sense that would render the statute offensive to the fourteenth amendment.—*Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923.

The second point of the insistence is that the statute does not bear equally upon employer and employe, and equally upon landlord and tenant. This point is aside

from the mark, for the reason that the crime denounced by the statute is not the mere breach of the promise, or failure, to perform service according to the terms of the contract; but as has been pointed out in the case of *Ex parte Riley,* 94 Ala. 82, 10 South. 528, and its congeners, the criminal feature by the statute reprehended is the entering into a contract with the intent to injure or defraud, or the refusal of the employe to perform the contract, with like intent.

It may be that the Legislature could have made the fraudulent refusal of the employer to pay the wages of the employe a crime (this point we do not decide) ; but simply because the present statute does not comprehend criminality on the part of the employer, does not argue or demonstrate its invalidity, on the idea of inequality in its operation. The crime denounced is not one against the person or property of the employer, but one against the dignity of the state—against the sovereignty.

But in this connection it is contended, on the authority of *Carr v. State,* 106 Ala. 35, 17 South. 350, 34 L. R. A. 634, 54 Am. St. Rep. 17, that the statute is violative of that provision of the state Constitution reading, "That no person shall be imprisoned for debt."—Const. 1901, § 20; Const. 1875, art 1, §21. The *Carr Case* arose under a statute dissimilar to the one sub judice, as will be seen from a reading of the two statutes. The statute in that case held void sought to make the mere receiving, by a bank officer, of money for deposit, with knowledge at the time that the bank was in a failing or insolvent condition, a misdemeanor. It not only disregarded the intent of the person receiving the money, but provided that the fine which might be assessed on conviction should not be less than double the amount of the deposit, that it should be payable only in lawful money of the United States—one-half to go to the person making the

[Bailey v. The State.]

deposit—and that the payment back to the depositor of the money deposited, together with the costs which had accumulated, should be a lawful defense to any prosecution under the act. Thus was a scheme to enforce the payment of a debt inartificially masked behind an attempted criminal statute, and for this vice, together with the infirmities above adverted to, the enactment was characterized, in the words of McClellan, J., as "a declaration of the baldest and most direct character to one party to a transaction whereby he has incurred a debt to the other, in the name of the state, that unless he pays that debt he shall be arrested, held for trial, convicted, fined, * * * and this obviously not for any taint of criminality in the transaction out of which the debt arose, but purely and simply for the non-payment of the debt."

It would require, it seems to us, but a casual reading of the opinion in the *Carr Case* to clearly differentiate that from the case in judgment. Here, as we have more than once decided (*Riley's case, supra; Bailey's Case, supra; McIntosh's Case,* 117 Ala. 128, 23 South, 668; *Vann's Case,* 150 Ala. 66, 43 South. 357), the statute was manifestly enacted for the punishment of fraudulent practices, and not for mere failure to pay debt; and the mere breach of contract is not made a crime, the criminality reprehended being the entering into a contract with the intent to injure or defraud.

The *Carr Case* was differentiated from cases like the one here considered, in the case of *Chauncey v. State,* 130 Ala. 71, 30 South. 403, 89 Am. St. Rep. 17; and it is significant that Justice McClellan, who wrote the opinion in the *Carr Case,* was Chief Justice at the time the Chauncey Case was decided, and concurred in the opinion of Tyson, J.

In the opinion on the former appeal of this case, we pointed out the distinction between the statute in judg-

ment and the act of March 1, 1901 (Acts 1900-01, p. 1208), held unconstitutional by Judge Jones (*Peonage Cases* (D. C.) 123 Fed. 671), and subsequently, by this court held unconstitutional, in *Toney's Case,* 141 Ala. 120, 37 South. 332, 67 L. R. A. 286, 109 Am. St. Rep. 23, and we deem it unnecessary to give further consideration to the phase of the brief calling attention to that line of cases.

Finally, it is urged that the statute is unconstitutional because it imposes upon the accused involuntary servitude. The argument upon this question, as found in appellant's brief, is based upon what is known as the "peonage system," which for some time prevailed in New Mexico. But by the light of clear understanding of the terms of the contracts upon which peonage was predicated (30 Cyc. 1382), the foregoing considerations will be sufficient to illustrate the inaptness of appellant's reasoning and of the premises upon which it is founded.

There is no error in the record, and the judgment of the city court is affirmed.

Affirmed.

DOWDELL, C. J. and ANDERSON and MCCLELLAN, JJ., concur.