# *Ex Parte* Woodward.

## *Violating Prohibition Law.*

### (Decided February 6, 1913.   61 South. 295.)

1. *Constitutional Law; Due Process; Rules of Evidence.*—Legislation providing that proof of one fact shall constitute prima facie evidence of the main fact in issue, where there is some rational connection between the fact proved and the fact presumed, and where it does not operate to preclude the presentation of the defense to the main fact, thus presumed, is not a denial either of due process of law, or the equal protection of the law, or trial by jury.

2. *Same.*—The provision of section .4, Acts 1909, p. 63, is not a denial of due process of law, notwithstanding the rule in this state that a person may not testify as to his uncommunicated motives, purposes or intentions; the relation between the presumption, and the facts and circumstances· upon. which it is predicated being nattural and rational, and defendant being permitted to show facts and circumstances bearing on his motives, purposes and intent, and hence, not being deprived of his right to present his defense to the main issue.

3. *Same; Vested Rights; Intoxicating Liquors; Power to Control.*— There can be no vested right or unqualified, irrevocable privilege to traffic in. intoxicating liquors, and the state may close all possible avenues through which its prohibition laws may be evaded or violated.

CERTIORARI to Court of Appeals.

Petition by M. E. Woodward for certiorari to the Court of Appeals to review the decision of that court, affirming the decision of the trial court in the case of *Woodward v. State,* 5 Ala. App. 202; 59 South. 688. Certiorari denied.

CALLAHAN & HARRIS, for appellant. Section 4, Acts 1909, p. 63, is violative of the Fourteenth Amendment of the Constitution of the United States, and of section 6. Constitution 1901.—*Bailey v. State,* 31 Sup. Ct. 145. The *Toole case,* 170 Ala. 41, furnishes the authority for all the decisions in the Alabama court for holding the

act constitutional, and the *Toole case* is based on the ruling in *Bailey v. State,* 161 Ala. 75, which case, on writ of error to the Supreme Court of the United States, was reversed, and hence, the authorities based upon it fall with it.—*Bailey v. State,* 219 U. S. 219. The effect of the rule of evidence is to deny due process of law.— 1 L. R. A. (N. S.) 636; 7 Enc. of Evid. 596. The court erred in admitting the stub of the revenue license.—10 Enc. of Evid. 901; 17 Cyc. 337; 4 Wig. Sec. 2550; 8 Ark. 396; *Peebles v. Tomlinson,* 33 Ala. 337; 153 U. S. 109.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. On the authorities cited, and on the opinion of the Court of Appeals in this case, the writ of certiorari should be denied.—*Woodward v. State,* 5 Ala. App. 202.

MCCLELLAN, J.—Certiorari to the Court of Appeals.

The petitioner's adjudication of guilt by the Morgan county law and equity court, under an indictment charging that he sold, kept for sale, offered for sale, or otherwise disposed of, spirituous, vinous, or malt liquors, contrary to law, was affirmed by the Court of Appeals. *Woodward v. State,* 5 Ala. App. 202, 59 South. 688-690. The application for rehearing was denied by that court on July 11, 1912.

The petitioner assails the correctness of the rulings of that court underlying its affirmance of the judgment of conviction in several respects. The chief point taken is that error of law was committed in the ruling that section 4 of the Fuller Bill (Acts Sp. Sess. 1909, pp. 63, 64) was not constitutionally invalid.

The Court of Appeals is required by the act of its creation to conform its rulings to those pertinently pro-

nounced by this court.—1 Ala. App. 5, 6. In observance of this affirmative restriction upon its powers and functions, that court pronounced section 4 of the Fuller Bill constitutionally valid upon the authority of *Toole v. State,* 170 Ala. 41, 53, 54, 54 South. 195, delivered November 17, 1910, and denied rehearing January 14, 1911.

In *Toole v. State,* the judgment of this court, in the pertinent particular, was, in part, rested upon *Bailey v. State,* 161 Ala. 75, 49 South. 886.    Upon writ of error the Supreme Court of the United States, on January 3, 1911, reversed the judgment of affirmance here entered on Bailey's appeal.—*Bailey v. State of Alabama,* 219 U. S. 219, 31 Sup. Ct. 145, 55 L. Ed. 191.

It is now contended for petitioner that the doctrine and conclusion of *Bailey v. Alabama,* 219 U. S. 219, 31 Sup. Ct. 145, 55 L. Ed. 191, not only destroys our deliverance in *Bailey v. State,* 161 Ala. 75, 49 South. 886, as authority, but also requires the conclusion that section 4 of the Fuller Bill is unconstitutional. It must be conceded, because of the reversal, that our conclusion in *Bailey v. State,* 161 Ala. 75, 49 South. 886, is no longer authoritative here. The question whether section 4 is constitutionally valid must be considered and determined without reference to our deliverance in *Bailey's Case.*

The act, approved August 25, 1909, in which section 4 is contained, has this title: "An act to further suppress the evils of intemperance, and to secure the obedience to and the enforcement of, and to prevent the evasion of, the laws of the state for the promotion of temperance and for the prohibition of the manufacture of and traffic in or unlawful disposition of prohibited liquors and beverages; to provide for the abatement of liquor nuisances and the seizure and destruction of

forfeited liquors and beverages, and to prescribe the procedure in such cases." Section 4 is as follows: "4. That the keeping of liquors or beverages that are prohibited by the law of the state to be manufactured, sold or otherwise disposed of in any building not used exclusively for a dwelling shall be prima facie evidence that they are kept for sale or with the intent to sell the same, contrary to law." The provisions of this act accord with the general and particular purposes foreshadowed in its title.

The act to which this act, approved August 25, 1909, is a complement was approved August 9, 1909.—Acts Sp. Sess. 1909, pp. 8-13. Its title reads: "An act to promote temperance and suppress the evils of intemperance; to discourage the use and consumption of alcohol, alcoholic, spirituous, vinous, malt, brewed, and fermented liquors and other liquors, liquids, bitters and beverages defined and set forth in the act, and substitutes or devices therefor, and to prohibit the manufacture, sale, offering for sale, keeping or having in possession for sale, barter, exchange, giving away, furnishing or otherwise disposing of the said liquors, liquids and beverages, the carrying on of the business of a brewer, distiller, rectifier of spirits, or retail or wholesale dealer in liquors, or retail or wholesale dealer in malt liquors, and the keeping or maintaining of unlawful drinking places, which are declared to be common nuisances and are to be abated as such."

Its third section provides in part: "That it shall be unlawful for any person, firm, or corporation or association within this state to manufacture, sell, offer for sale, keep or have in possession for sale, barter, exchange, give away, furnish at public places or elsewhere, or otherwise dispose of, the prohibited liquors and bev-

erages described in section 1 of this act, or any of them, in any quantity," etc.

Latterly in that act a penalty of fine or imprisonment, or both, is prescribed for its violation.

The title, just quoted, correctly indicates the substance of the act of which it is a part.

This general doctrine, expressed for the Supreme Court by Justice LURTON in *Mobile, etc., R. R. Co. v. Turnipseed*, 219 U. S. 42, 43, 31 Sup. Ct. 136, 137 (55 L. Ed. 78, 32 L. R. A. [N. S.] 226, Ann. Cas. 1912A, 463), must be accepted as long since settled: "Legislation providing that proof of one fact shall constitute prima facie evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government. Statutes, national and state, dealing with such methods of proof in both civil and criminal cases abound, and the decisions upholding them are numerous. * * * That legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law, it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under the guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed. If a legislative provision, not unreasonable in itself, prescribing a rule of evidence, in either civil or criminal cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him."

In *Lindsley v. Natural Carbonic Gas Co.*, 220 U. S. 61, 81, 82, 31 Sup. Ct. 337, 342 (55 L. Ed. 369, Ann. Cas. 1912C, 160), it is said (Justice Van Devanter writing for the court) : "Each state possesses the general power to prescribe the evidence which shall be received and the effect which shall be given to it in her own courts, and may exert this power by providing that proof of a particular fact, or of several taken collectively, shall be prima facie evidence of another fact. Many such exertions of this power are shown in the legislation of the several states; and their validity, as against the present objection, has been uniformly recognized, *save where they have been found to be merely arbitrary mandates, or to discriminate invidiously between different persons in substantially the same situation.—Bailey v. Alabama,* 219 U. S. 219, 238 [31 Sup. Ct. 145, 55 L. Ed. 191] ; *Board of Commissioners v. Merchant,* 103 N. Y. 143, 148 [8 N. E. 484, 57 Am. Rep. 705]." (Italics supplied.)    The court then quotes approvingly a pertinent excerpt from its opinion in *Mobile, etc., R. R. Co. v. Turnipseed, supra.*

Where the statute is expressive of the legislative power defined by the Supreme Court in the decisions quoted, and does not transgress the limitations for a constitutional exertion of that power, prescribing only a temporary, as distinguished from a conclusive, inference of fact from a fact or facts or circumstances proved, no impairment of constitutional right is effected; nor is any provision of either the state or federal Constitution thereby violated.    The protective guaranties of *due process of law* and of the *equal protection of the law* and of the *right to trial by jury* are not infringed by such a statute.—*People v. Cannon,* 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep. 668; *Board of Commissioners v. Merchant,* 103 N. Y. 143, 8 N. E. 484, 57 Am. Rep.

705, cited in *Lindsley v. Carbonic Gas Co., supra; State v. Buck,* 120 Mo. 479, 25 S. W. 573; *State v. Kingsley,* 108 Mo. 135, 18 S. W. 994; *State v. Beach,* 147 Ind. 74, 43 N. E. 949, 46 N. E. 145, 36 L. R. A. 179; *Common-wealth v. Williams,* 72 Mass. (6 Gray) 1; *State v. Cunningham,* 25 Conn. 195; 2 Woollen & Thornton on Intox. Liquors, § 923, and notes; *Goldstein v. Maloney,* 62 Fla. 198, 57 South. 342; Joyce on Intox. Liquors, § 44.

The legislative power being as stated, the real question is: Does section 4 evidence an invalid exercise thereof?

While not a literal copy of section 2427 of the Code of 1897 of Iowa, sections 4 and 5 of the Fuller Bill manifest an identity of ideas therewith, and, for all practical purposes, express them in similar language. That statute, in the particular with which we are now concerned, was pronounced valid in *Santo v. State,* 2 Clarke (Iowa) 165, 212-214, 63 Am. Dec. 487, delivered in 1855, anterior, of course, to the adoption of the fourteenth amendment.

A number of other states have had, or have now, substantially similar statutes. Some of them are Kansas, Nebraska, Connecticut, New York, and Vermont. The principle to which such enactments are referable has been illustrated in numerous instances, other than with respect to the traffic in liquors, where the legislative purpose was to exert the police power.

If unaffected by the rule of evidence, to be later stated, prevailing in this state, reason and the following authorities, in addition to the general doctrine and its limitations before quoted from the *Turnipseed* and *Lindsley Cases,* admit of no doubt of the validity of the section under consideration.—*State v. Barrett,* 138 N C. 630, 50 S. E. 506, 1 L. R. A. (N. S.) 626, and note;

*Toole v. State, supra; People v. Cannon,* 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep. 668, and note on pages 6-84; *Commonwealth v. Williams,* 72 Mass. (6 Gray) 1; *State v. Cunningham,* 25 Conn. 195; *Parsons v. State,* 61 Neb. 244, 85 N. W. 65; *Durfee v. State,* 53 Neb. 214, 73 N. W. 676; *State v. Sheppard,* 64 Kan. 451, 67 Pac. 870; *State v. Intox. Liquors,* 109 Iowa, 145, 80 N. W. 230; *Lincoln v. Smith,* 27 Vt. 328, 354, et seq.; Joyce on Intox. Liquors, § 672; *Board of Commissioners v. Merchant,* 103 N. Y. 143, 8 N. E. 484, 57 Am. Rep. 705; Woollen & Thornton on Intox. Liquors, § 923; 11 Ency. Law (2d Ed.) p. 551.

Our rule of evidence, to which allusion has been made, is that a person may not testify as to his uncommunicated motives, purposes, or intention; and in *Bailey v. Alabama,* 219 U. S. 228, 31 Sup. Ct. 145, 55 L. Ed. 191, it was said this rule of evidence would be read into the statute there under consideration. And it was accordingly ruled that the statute there in question constituted, in reality, a sufficient warrant for conviction of an accused of the "mere breach of a contract for personal service, coupled with the mere failure to pay a debt which was to be liquidated in the course of such service"; or, as otherwise therein stated: "We cannot escape the conclusion that, although the statute in terms is to punish fraud, still its natural and inevitable effect is to expose to conviction for crime those who simply fail or refuse to perform contracts for personal service in liquidation of a debt, and, judging its purpose by its effect, that it seeks in this way to provide the means of compulsion through which performance of such service may be secured," etc.

In the evident effort to constrict the ruling there made to an unambiguous status of statutory purpose and effect, it was said, "The point is that in such case

the statute *authorizes* the jury to convict," the basis of such authorization being found by the court in the before-quoted conclusion from the statute of two facts only, viz., (a) mere breach of a contract for personal service, and (b) a mere failure to pay a debt in the course of that service, from which the court concluded that an unconstitutional means was thereby afforded to compel the performance of the contract.

It is clear that the court did not intend to enlarge the limitations, with respect to statute-created presumption, stated in the *Turnipseed Case, supra,* which is cited approvingly in *Bailey's Case,* nor to lay down a different rule from that expressed in the subsequently delivered *Lindsley Case, supra.* From the whole opinion in the *Bailey Case* it appears with satisfactory certainty that the majority of the Supreme Court considered the *status* involved in Bailey's prosecution, viz., a contract for personal service, as a controlling factor in the ruling there made. This *status,* manifestly different from that section 4 presents, obviously quickened the sensibilities of that tribunal to a condition which, to penalize as there analyzed, trenched unjustly upon the natural right, not only to contract for personal service, but to be free from the imposition of a penalty for the mere failure to discharge a debt created by the contract for personal service. Much weight, in attaining this judgment, was given the law of this state, as pronounced under the statute before the now avoided amendment, in *Ex parte Riley,* 94 Ala. 82, 10 South. 528.

The status to which section 4 relates is not, of course, affected by the consideration so potent in the decision of *Bailey's Case.* It is a part of a system expressive of the state's conceded police power in respect of the traffic in liquors, which the state has condemned as harm-

ful to peace, health, safety, and morals. In such a traffic, whether large or small, no one has or can have a vested right or an unqualified, irrevocable privilege. —*Foster v. Kansas,* 112 U. S. 201, 5 Sup. Ct. 8, 97, 28 L. Ed. 629; *License Cases,* 5 How. 504, 577, 12 L. Ed. 256; *State v. Skeggs,* 154 Ala. 249, 265, 46 South. 268. That all possible avenues through which prohibitory laws of this character may be evaded or violated may be closed, and thereby evasion and violation of the major legislative purpose prevented, is generally accepted.—*Feibelman v. State,* 130 Ala. 122, 30 South. 384.

In aid of the effectuation of the major legislative intent to prohibit the unlawful traffic in liquors, and thereby render more difficult the forbidden commerce, it was obviously reasonable to statutorily impute to the keeping of such liquors at any other place than a "building not used exclusively for a dwelling" the presumptive, nonconclusive, result that such liquors were "kept for sale or with the intent to sell the same," in violation of law.

Taking section 4 as having read into it our stated rule of evidence, is *due process of law* in fact or in effect denied one so accused?

Without the stated rule of evidence, there can be no well-founded contention that section 4 is constitutionally invalid; and, on the other hand, it is not and cannot be soundly asserted that, alone, the stated rule of evidence offends any constitutional provision, federal or state. Does their blending deny *due process of law?*

In so far as the present inquiry, with its circumstances, concerns this court, due process of law is afforded one accused if he is accorded a fair opportunity to explain and contest the charge brought against him; and the rule is not arbitrary in character.—8 Cyc., pp.

1090, 1091; *Goldstein v. Maloney,* 62 Fla. 198, 57 South. 342; *Lindsley v. National Carbonic Gas Co.,* 220 U. S. 61, 31 South. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160. That the stated statutory presumption, when complemented by the stated rule of evidence, is not *arbitrary* is apparent. The relation between the facts and circumstances upon which the statutory presumption is predicated and the merely prima facie presumption thus established is rational and natural. There is between such facts and circumstances and the merely prima facie presumption thus raised no such hiatus, in reasonable sequence, as indicates an arbitrary pronouncement of conclusion in support of the main fact.—*Commonwealth v. Williams,* 72 Mass. (6 Gray) 1; *State v. Barrett,* 138 N. C. 630; 50 S. E. 506, 1 L. R. A. (N. S.) 626, and note thereto.

Our rule of evidence simply and generally closes the mouths of witnesses, whether parties or not, to declare, in chief, their uncommunicated motives, purposes, or intents. It does not impair or qualify the utmost freedom to show *facts* and *circumstances* relevant to issues involving motive, purpose, or intent. One accused of the offense of which petitioner was adjudged to be guilty may introduce, in negation of the mere prima facie presumption the statute (section 4) raises, every fact and circumstance attending or relating to the *keeping* of the forbidden liquors in the place other than a building used exclusively for a dwelling. The sole, whole effect of the rule of evidence, in such cases, is to deny the accused the right to enter a bare denial of his intent in so keeping the forbidden liquors. The presumption is evidential only. It is not conclusive. The jury is not bound to accept it as showing guilt. The jury may disregard it and conclude to innocence. The quantity of the liquors so *kept* by the accused may be

so inconsequential as to entirely negative any notion that it was kept with unlawful intent, or it may be the liquors so kept were for some legal, personal use manifestly inconsistent with an unlawful intent; in any of which events the accused may show, by himself or otherwise, circumstances or facts tending to refute the presence of an unlawful intent in the premises. Having such unrestricted, reasonable opportunity and means, under the laws of this state, of making defense to such a charge by showing relevant facts and circumstances in negation of the intent so imputed, no constitutional right of the accused is violated in the denial, to all of the class in which he is, to assert that in so *keeping* the forbidden liquors he entertained no unlawful intent in the premises; and *Bailey v. Alabama, supra,* does not conclude to the contrary.

In conclusion on this point, and in response to the suggestion that the presumption raised by section 4 would, upon occasion, impute to wholly innocent conduct an unlawful intent in the premises, we cannot do better than quote (omitting the numerous citations made) the language of the Supreme Court (Justice Hughes writing) in *Purity Extract & Tonic Co., et al. v. C. C. Lynch,* 226 U. S. 192, 201, 33 Sup. Ct. 44, 46 (57 L. Ed. —), delivered December 2, 1912: "It is also well established that, when a state, exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary, in order to make its action effective. It does not follow that because a transaction, separately considered, is innocuous it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government.    *    *    *

With the wisdom of the exercise of that judgment the court has no concern; and, unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. To hold otherwise would be to substitute judicial opinion of expediency for the will of the Legislature—a notion foreign to our constitutional system."

We have reconsidered the rulings of the Court of Appeals upon the question raised by timely objections to the introduction in evidence by the state of "a paper termed a stub of a revenue license," and of the certificate, by the internal revenue collector of Alabama, authenticating said stub, of which he was the custodian. Our opinion accords with that attained by the Court of Appeals on these matters.

The petition is denied.   All the Justices concur.