# Carr v. The State.

*Indictment of a Banker for receiving a Deposit of Money knowing his Bank was Insolvent.*

1. *Receiving money knowing bank insolvent; act making it a missdemeanor unconstitutional* —The act to prevent banks, bankers and others from receiving deposits of money or other things of value, when insolvent, approved December 12, 1892 (Acts 1892-93.p. 94), providing that a banker, or other person who receives money or other things of value, knowing of his insolvency, is guilty of a misdemeanor, punishable by a fine of double the amount of the deposit, one-half of which is to be paid to the depositor, but that the payment back to the depositor of the amount deposited, with interest and costs, before conviction, shall be a complete defense to any prosecution under the act, is unconstitutional and void, as violative of Article I, section 21 of the constitution, which declares "that no person shall be imprisoned for debt."

[Carr v. The State.]

2. *Same; same.*—The constitutionality of this act can not be upheld on the ground that a receipt of the deposit by a banker under the circumstances stated in the act is a fraud, and that therefore the transaction constitutes a case of fraud; since section 21 of Article I of the constitution abolishes the whole system of imprisonment for debt, which prevailed in this State from 1819 to 1868, when it was first adopted in its present form as a part of our organic law, and no exception can be made in cases of fraud.

APPEAL from the District Court of Colbert.

Tried before the Hon. W. P. CHITWOOD.

The facts of the case are sufficiently stated in the opinion.

ASA E. STRATTON, JAMES JACKSON and ISAAC ORME, for appellant.—The statute, for the violation of which the appellant was indicted and tried, provides imprisonment for debt as a punishment for crime, and is, therefore, unconstitutional.—*Ex parte Hardy*, 68 Ala. 303; 10 Amer. & Eng. Encyc. of Law, 212.

WILLIAM C. FITTS, Attorney-General, for the State, cited *Carr v. State*, 104 Ala. 4; *Carr v. State*, 104 Ala. 43.

McCLELLAN, J.—The defendant, Hinton E. Carr, is charged, in one count as the president, and in another as a member, of a banking firm, with receiving from Robert T. Abernathy for deposit three hundred and fifty-five dollars, knowing at the time, or having good cause to believe, that said firm was in a failing or insolvent condition. The indictment is drawn under an act "to prevent banks, bankers, firms, corporations, or other persons from receiving deposits of bank notes, specie money or other thing of value, when in a failing or insolvent condition," approved December 12, 1892, which is in the following words:

"Section 1. *Be it enacted by the General Assembly of Alabama,* That any president, cashier or other officer, by whatever title he may be called or known, of any bank, banking firm or corporation engaged in a banking business, or any other person or persons, engaged in said business, or the agent or agents thereof, who shall receive for deposit any bank notes, specie money or other thing of value, knowing at the time said deposit is re-

ceived, or having good cause to believe, that such bank, banking firm, corporation, person or persons, are in a failing or insolvent condition, shall for each offense be deemed guilty of a misdemeanor, and on conviction thereof be fined not less than double the amount of said deposit.

"Sec. 2. *Be it further enacted*, That in all convictions under this act, the fine shall be paid in lawful money of the United States only, one-half of which shall go to the person who made the deposit.

"Sec. 3. *Be it further enacted*, That the payment back to the depositor of the bank notes, specie money or other thing of value, deposited, before the conviction hereunder, and the court costs thereof, which may have accumulated, shall be a good and lawful defense to any prosecution under this act."—Acts 1892–93, pp. 94–5.

By demurrer to the indictment and motion in arrest of judgment, defendant raised the question of ˌthe constitutionality of the foregoing statute, and reserved the court's ruling, sustaining the indictment and statute, for our consideration.

1. The statute, it is insisted for the appellant, is violative of Art. I, § 21 of the Constitution of the State, which provides : "That no person shall be imprisoned for debt." It is to be observed in the outset that this provision of the organic law is essentially different from the provisions on this subject in many other State constitutions, in that it contains no exception of "cases of fraud ;" and on the same line is essentially different from the constitutions of this State of 1819, 1861 and 1865, in each of which the language is that, "The person of a debtor, where there is not strong presumption of fraud, shall not be detained in prison, after delivering up his estate for the benefit of his creditors, in such manner as shall be prescribed by law." Const. 1819, Art. I, § 18 ; Const. 1861, Art. I, § 18 ; Const. 1865, Art. I, § 22. This change was made in the constitution of 1868, (Art. I, § 22) where the provision assumed its present form. In *Ex parte John Hardy*, 68 Ala. 303, 318, it was held—and we do not understand that there was any division of opinion on this point—that the elimination of the exception as to frauds was a pregnant omission, which left the guaranty of immunity from imprisonment to the debtor to apply to all cases of debt,

whether they involved fraud or not. So that the statute we are considering can derive no aid from the idea that the receipt of a deposit by a banker under the circumstances stated is a fraud, and, hence, that the transaction would constitute "a case of fraud," since even in such cases there can be no imprisonment for debt.

2. The "imprisonment for debt," which the framers of constitutions embodying this provision doubtless had most prominently in mind, was imprisonment upon process issuing in civil actions, the object and sole purpose of which was the collection of debts : it was to remove the evils incident to the system of taking the debtor's person upon a *capias ad satisfaciendum* that this organic inhibition came primarily to be ordained. But the effect of its ordination has been to establish a public policy much broader in its influence upon legislation and operation upon judicial proceedings than would have sufficed for the eradication of the ills which attended upon the recovery or attempted recovery of debts by restraint of the debtor's person. This policy is inimical alike to the incarceration of a debtor as a means of coercing payment and to his punishment by imprisonment for a failure to pay, at least when such failure results from inability. And hence it is that, while neither the letter of the inhibition, nor the broader policy which is engendered by it and has come to be a part of it, has any application to criminal judgments for fines and costs, yet it is not within legislative competency to declare the mere non-performance of a contract of indebtedness a misdemeanor and punish the commission thereof by imprisonment, directly or indirectly, for, as said in the notes to *State v. Brewer*, 37 Am. St. Rep. 753, 758, "as that which is prohibited to be done directly cannot be accomplished by indirection, the legislature can not declare the mere non-performance of a contract to be a misdemeanor, for that would amount to an attempt to legalize imprisonment for debt." And so in Tennessee there was a statute which made it unlawful for any person, firm, corporation, &c., &c., to refuse to cash any checks or script issued by them if presented to them within thirty days of its date of issuance, and declared that any such person, &c., so refusing to cash in lawful money such checks or script would be guilty of a misdemeanor, and, upon conviction, should be fined not less

than ten nor more than twenty-five dollars. The consti-
tutional provision in that State is that ' The legislature
shall pass no law authorizing imprisonment for debt in
civil cases''—terms which would seem to allow greater
latitude of legislation in respect of cases of the class we
are considering than our own provision—and, bringing
the statute to the test of this inhibition, the court said:
"The act of the legislature in question, while not di-
rectly authorizing imprisonment for debt, does attempt
to create a crime for the non-payment of debts evidenced
by check, script, or order, and for such crime provides
a penalty, which may or may not be followed by im-
prisonment. In that way and for that reason, the act is
violative of the spirit, if not of the letter, of the con-
stitutional provision above cited. It is an indirect im-
position of imprisonment for the non-payment of debt,
and is, therefore, clearly within the constitutional inhi-
bition."—*State v. Paint Rock Coal & Coke Co.*, 92 Tenn.
81, s. c. 36 Am. St. Rep. 68. And this principle of ap-
plying the policy of the organic law on this subject to
cases which may not be strictly within its letter has
received recent recognition by this court.—*Ex parte Rus-
sellville*, 95 Ala. 119.

The statute involved in the case at bar is a much more
flagrant attempt to authorize imprisonment for debt, in
our opinion, than that denounced by the Supreme Court
of Tennessee. It was not the avowed purpose of that
act to enforce the payment of a debt by means of a
prosecution under it. This one cannot be read without
conviction that its purpose is to impose imprisonment
for debt, and to coerce the payment of a debt by the
duress it authorizes. Its requirement that the fine shall
be paid only in money, that it shall be double the amount
of the deposit, and that *one-half of it*, that is, a sum
equal to the amount deposited, *shall go to the person who
made the deposit*, tends, at least, to show that coercion
of payment of the debt which the depositary owed the
depositor—for the transaction created the relation of
debtor and creditor between them—by means of the re-
straint which the imposition of the fine itself immedi-
ately put upon the defendant—not to speak here of his
imprisonment preliminary to the trial—and, that failing
to enforce payment, by means of imprisonment at hard
labor for the payment of the fine and costs, was the

moving purpose and efficient cause of the enactment of the statute. And what doubts on this point might have been left, had the statute stopped here, are removed beyond peradventure by its further provision *that payment to the depositor at any time before conviction, "shall be a good and lawful defense to any prosecution under this act."* There cannot be two opinions as to the intent and meaning, or the effect upon the whole enactment, of this last and most remarkable provision. It is a declaration of the baldest and most direct character to one party to a transaction whereby he has incurred a debt to the other, in the name of the State, that unless he pays that debt, he shall be arrested, held to trial, tried, convicted, fined and imprisoned at hard labor, and this obviously not for any taint of criminality in the transaction out of which the debt arose, but purely and simply *for the non-payment of the debt.* For this default, and until it is purged either by simply paying the debt and accrued costs before conviction or by working out double the debt and the costs, the debtor may be imprisoned for an indefinite time before trial, merely and only because he does not pay the debt and the expenses of putting this coercion upon him, there being no pretense even of ultimately punishing him for taking the deposit, if the preliminary imprisonment shall have the desired effect of extorting the money he owes the depositor out of him, and if, as is the case here, the compulsion of preliminary imprisonment fails of its intended effect, he may, under the guise of punishing an act which was not criminal before this statute, and which upon the statutory definition does not necessarily involve abstract criminality or the taint of moral turpitude, and which might up to the very moment of conviction have been shorn of even its factitious criminality by the payment of a debt, be held to hard labor until his services at the statutory rate shall yield the amount of the debt, and for an equally long time to work out a like sum imposed upon him as an additional penalty for his failure to pay the debt before conviction. There can, in our opinion, be no sort of doubt that this enactment is violative of the constitutional provision, and therefore void. The trial court erred in overruling the demurrers which went to this point, and the motion in arrest of judgment based upon them. Its judgment

will be reversed, and a judgment will be here entered discharging the defendant.

Reversed and rendered.