(104 So. 906)

## GOOLSBY v. STATE. (6 Div. 627.)

(Court of Appeals of Alabama. May 19, 1925. Rehearing Denied June 30, 1925.)

**1. False pretenses ⊜2—Act making fact that insufficient funds on deposit at time instrument presented for and refused payment prima facie evidence of fraudulent intent on part of maker or drawer held unconstitutional.**

In view of Acts 1915, p. 319 (Code 1923, §§ 4158–4160), *held*, that Acts Sp. Sess. 1921, p. 47, making it unlawful to obtain money or credit by check or order which is not paid by drawee, and not refunded on written demand, and making fact that there are not sufficient funds on deposit at time instrument is presented for and refused payment prima facie evidence of fraudulent intent, is unconstitutional. (Response of Supreme Court to certified question.)

**2. Courts ⊜210—Court of Appeals, on certification of Supreme Court's response to question of constitutionality of statute, may proceed to final judgment under statute as construed.**

Under Acts 1911, pp. 95, 449 (Code 1923, §§ 7310, 7322), *held* that, when Supreme Court decides question propounded by Court of Appeals as to constitutionality vel non of a statute, and response is certified to Court of Appeals, it is within its established jurisdiction to proceed to final judgment in pending cause under statute as construed by Supreme Court. (Additional response by Supreme Court on rehearing.)

**3. False pretenses ⊜2—Statute providing punishment for fraud amounting to false pretense in obtaining money by order which is not paid constitutional.**

Acts 1915, p. 319 (Code 1923, §§ 4159, 4160), providing punishment for fraud or misrepresentations which amount to false pretenses in obtaining money or other property by check, draft, or order which is not paid, is within provisions of state and federal Constitutions. (Additional response by Supreme Court on rehearing.)

Appeal from Circuit Court, Tuscaloosa County; Fleetwood Rice, Judge.

C. P. Goolsby was convicted of obtaining money on a draft which was not paid, with intent to defraud, and he appeals. Reversed and rendered.

See, also, Goolsby v. State, 104 So. 901.

Reuben H. Wright and Leigh M. Clark, both of Tuscaloosa, for appellant.

A law which makes one fact prima facie evidence of guilt or fraudulent intent, without providing that the accused may give in evidence his uncommunicated intent, deprives him of the right to answer the accusation, and denies him due process of law. 12 C. J. 1205; Bailey v. Ala., 219 U. S. 227, 31 S. Ct. 145, 55 L. Ed. 191; M., J. & K. C. v. Turnipseed, 219 U. S. 38, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463; Opinion of Justices, 208 Mass. 619, 94 N. E. 1044, 34 L. R. A. (N. S.) 771; McFarland v. Am. Sugar Ref. Co., 241 U. S. 79, 36 S. Ct. 498, 60 L. Ed. 899; McCormick & Richardson v. Joseph & Anderson, 77 Ala. 236; Wheless v. Rhodes, 70 Ala. 419; Whizenant v. State, 71 Ala. 383; Burke v. State, 71 Ala. 377; Holmes v. State, 136 Ala. 80, 34 So. 180. The law providing imprisonment for debt is void. Const. Ala. 1901, § 20; Ex parte Hardy, 68 Ala. 303; Carr v. State, 106 Ala. 35, 17 So. 350, 34 L. R. A. 634, 54 Am. St. Rep. 17; Ex parte Russellville, 95 Ala. 19, 11 So. 18; State v. Paint Rock Co., 92 Tenn. 81, 20 S. W. 499, 36 Am. St. Rep. 68.

Harwell G. Davis, Atty. Gen., Lamar Field, Asst. Atty. Gen., and Thos. C. McClellan, of Birmingham, for the State.

The indictment is not subject to demurrer. Ex parte King, 102 Ala. 182, 15 So. 524; Chauncey v. State, 130 Ala. 71, 30 So. 403, 89 Am. St. Rep. 17. Constitutionality of a statute will not be considered, unless essential to the disposition of a case. 3 Michie's Ala. Dig. 205. The Supreme Court alone has jurisdiction to dispose of this appeal. Code 1923, § 7310.

BRICKEN, P. J. This appellant, defendant in the court below, was indicted, tried, and convicted for the violation of an act of

the Legislature known as the fraudulent check law. This act was approved November 1, 1921.. Acts Sp. Sess. 1921, p. 47. Several questions are presented for the consideration of this court, but the principal—in fact, controlling—question is the validity of the act under which this prosecution is based; the insistence being made that this act of the Legislature is unconstitutional, and that a prosecution under such act is illegal and void.

Upon a study of this question the writer became convinced that this insistence was well taken, and reached the conclusion that the judgment of conviction could not stand for that reason. This court thereupon made and entered the following order, certifying the question to the Supreme Court as under the statute made and provided:

"Certificate to the Supreme Court from the Court of Appeals of Alabama.

"Under the provisions of the statute (Code 1923, § 7322), the following question is submitted to the Supreme Court for determination: Is the act of the Legislature of Alabama approved November 1, 1921 (Acts Ala. Sp. Sess. 1921, pp. 47, 48), violative of the Constitution of Alabama?

"The caption of said act is as follows: 'To make it unlawful for any person to obtain money or other property or credit by check, draft or order which is not paid by the drawee; and where the same is not refunded or restored by such person on written demand mailed to his last known address; and to make the fact of such person not having on deposit with the drawee such money or other property prima facie evidence of said fraudulent intent.'

"A cause dependent upon this proposition solely is pending in this court.
"C. R. Bricken,
"Presiding Judge.
"Wm. H. Samford,
"James Rice,
"Judges.
"Certified on this 12th day of March, 1925."

The Supreme Court (all Justices concurring) agreed with this court that the act in question is unconstitutional, and in reply to the above-mentioned certification of this question made the following response, which is conclusive of this appeal:

Response of Supreme Court to Certified Question.

THOMAS, J. The act of 1915 (Acts 1915, p. 319) is codified as sections 4158–4160 of the Code of 1923, as rewritten by the recess code committee of the Legislature. In the act and its codification are contained provisions to the effect that upon the trial for obtaining money, other property, or credit by check, draft, or order which is not paid, any person so charged shall be a competent witness to testify to his circumstances *and intent when he drew* the check, draft, or order.

Why was the act of 1921 not included in the Code of 1923, rather than the act of 1915?

[1] The act of 1915 was given consideration in Hotel Supply Co. v. Reid, 16 Ala. App. 563, 80 So. 137, where the suit was for damages for malicious prosecution, and the observation is there made as to the evidence:

"While the evidence shows that there were no funds on deposit to plaintiff's credit at the bank on which the check made the basis of the prosecution was drawn, the evidence is in conflict as to whether this was known to the defendant at the time the check was given, and as to whether the defendant procured the check to be given and postdated with the knowledge that the plaintiff was without funds on deposit to pay the check. * * *"

And it was held that "defendant was therefore not entitled to the affirmative charge." This case is cited with approval—where design was omitted from an Arizona statute—in George v. Williams (Ariz.) 222 P. 411, a charge of false prosecution where the ingredient of knowledge was left out; held, the charge was "lacking in substance."

In Gustin v. State, 19 Ala. App. 558, 99 So. 54, the indictment conformed substantially to the provisions of the act approved August 31, 1915 (Gen. Acts, p. 319), and the Court of Appeals declared that the act of 1915 was not repealed by implication by the Act of November 1, 1921 (Acts Sp. Sess. 1921, p. 47). The check or draft on which that indictment was founded was dated February 5, 1921. It was held that the act of 1915, applicable to the prosecution, was not repealed, as stated, by implication by the act of 1921. The last-cited case does not appear to have been considered by this court on certiorari. Hence the instant "certificate" to this court by the Court of Appeals under the provisions of the original statute. Act approved April 18, 1911 (Acts 1911, p. 449, § 31); Banks v. State, 207 Ala. 179, 93 So. 293, 24 A. L. R. 1359; State v. Williams, 207 Ala. 517, 93 So. 381; D. M. Ferry & Co. v. Hall, 188 Ala. 178, 66 So. 104, L. R. A. 1917B, 620.

For illustration of the application of the statutes and the rules of evidence obtaining, we advert to the pleading and defendant's evidence thereunder. For convenient reference we take the indictment from the brief before us. It is within the provisions of the act of 1921, charging that defendant did "with intent to defraud" obtain from the hotel the sum of money named, "by means of a draft, of which he was the maker or drawer and *which draft was not paid by the drawee,*" setting out that instrument, and concluding with the averment that "seven days' written notice has been given to the said C. P. Goolsby [defendant] of the drawee's refusal or failure to pay said draft, and the same has not been paid against the peace and dignity of the state of Alabama." (Italics supplied.)

Such is the crime charged, and for which defendant stands convicted, under Acts 1921, p. 47.

Under this pleading, the state having made out the prima facie proof under the statute and closed its evidence, the defendant testified:

"The bank on which the draft in question was drawn had been in the habit of paying my drafts for many months prior to the date on which this draft was drawn, and later I took their other drafts up. I assumed that they would pay this one."

Thereupon the following transpired, as shown by brief of counsel:

"Defendant's counsel asked witness this question: 'Did you or not intend to defraud McLester Hotel or the two Snows when you gave them the draft and got their money?' The state objected, on the ground that witness could not testify to his uncommunicated motive or intention, and the court sustained the objection, and defendant excepted. Defendant then offered to show that he had no intention to defraud McLester Hotel when he gave the draft in question, but the court refused to allow this, and defendant again duly and legally excepted.

"Defendant's counsel asked the witness the following question: 'What was your intention at the time you gave the draft in question to McLester Hotel?' The state objected, on the ground that witness could not testify to his uncommunicated motive or intention, and the court sustained the objection, and defendant excepted. Defendant then offered to show that he had no intention to defraud McLester Hotel when he gave the draft in question, but the court refused to allow this, and defendant again duly and legally excepted."

Insisting that his conviction is unlawful, defendant contends that the cases cited by the Attorney General are without application; the state citing Ex parte King, 102 Ala. 182, 15 So. 524, and Chauncey v. State, 130 Ala. 71, 30 So. 403, 89 Am. St. Rep. 17. In those cases the indictments were under statutes providing against the obtaining of board and lodging by false representation—"fraud or misrepresentation." Acts 1892–93, p. 1089; Code 1896, § 4755. It was held in these two cases not to be imprisonment for debt, but punishment for the wrong perpetrated in the misrepresentations made. The fraud or misrepresentation was the crime charged, and for which convictions were sustained. In the Chauncey Case, supra, was distinguished the hotel statute from that held unconstitutional in Carr v. State, 106 Ala. 35, 17 So. 350, 34 L. R. A. 634, 54 Am. St. Rep. 17, as seeking to provide a method of imprisonment for debt, in evasion of the plain interdiction of Const. art. 1, § 20.

The statute condemned (Acts 1892–93, pp. 94, 95) in Carr v. State, supra, provided that any officer of a banking firm or corporation, or any other person or agent thereof, engaged in the banking business, "who shall receive for deposit any bank notes, specie money, or other thing of value, knowing at the time said deposit is received, or having good cause to believe, that such bank, banking firm, corporation, person or persons, are in a failing or insolvent condition, shall for each offense be deemed guilty of a misdemeanor," and that—

"The payment back to the depositor of the bank notes, specie money, or other thing of value, deposited before the conviction hereunder, and the court costs thereof, which may have accumulated, shall be a good and lawful defense to any prosecution under this act."

Mr. Justice McClellan, in the Carr Case, supra, adverted to the distinction, found in the provision of our present Constitution as article 1, § 20, "that no person shall be imprisoned for debt," from that contained in the several Constitutions—viz. of 1819, art. 1, § 18; 1861, art. 1, § 18; 1865, art. 1, § 22—which excepted "causes of fraud." This provision in the former Constitutions was, "The person of a debtor, where there is not strong presumption of fraud, shall not be detained in prison, after delivering up his estate for the benefit of his creditors, in such manner as shall be prescribed by law," while the provision in the Constitution of 1868 (article 1, § 22), of 1875 (article 1, § 21), and of 1901 (article 1, § 20) is "that no person shall be imprisoned for debt." The elimination of the exception as to fraud has been held to be "a pregnant omission, which left the guaranty of immunity from imprisonment to the debtor to apply to all cases of debt, whether they involved fraud or not." Ex parte Hardy, 68 Ala. 303, 318, 319; Carr v. State, supra.

In Ex parte Russellville, 95 Ala. 19, 11 So. 18, and In re Hurley, 95 Ala. 19, 11 So. 18, the provision of the city charter, condemned as being offensive to the stated provision of the Constitution, sought to authorize, in default of payment of the fine and costs imposed on conviction, hard labor or imprisonment "until the fine and costs are paid." Mr. Justice McClellan said of the act approved December 12, 1892 (Acts 1892–93, pp. 94, 95):

"The statute involved in the case at bar is a much more flagrant attempt to authorize imprisonment for debt, in our opinion, than that denounced by the Supreme Court of Tennessee. State v. Paint Rock Coal & Coke Co., 92 Tenn. 81 [20 S. W. 499], 36 Am. St. Rep. 68. It was not the avowed purpose of that act to enforce the payment of a debt by means of a prosecution under it. This one cannot be read without conviction that its purpose is to impose imprisonment for debt, and to coerce the payment of a debt by the duress it authorizes. Its requirement that the fine shall be paid only in money, that it shall be double the amount of the deposit, and that one-half of it—that is, a sum equal to the amount deposited—shall go to the person who made the deposit, tends, at least, to show that coercion of payment of the debt which the depositary owed the depos-

itor, for the transaction created the relation of debtor and creditor between them, by means of the restraint which the imposition of the fine itself immediately put upon the defendant, not to speak here of his imprisonment preliminary to the trial, and that failing to enforce payment, by means of imprisonment at hard labor for the payment of the fine and costs, was the moving purpose and efficient cause of the enactment of the statute. And what doubts on this point might have been left, had the statute stopped here, are removed beyond peradventure by its further provision *that payment to the depositor at any time before conviction 'shall be a good and lawful defense to any prosecution under this act.'* There cannot be two opinions as to the intent and meaning, or the effect upon the whole enactment, of this last and most remarkable provision. It is a declaration of the baldest and most direct character to one party to a transaction whereby he has incurred a debt to the other, in the name of the state, that unless he pays that debt he shall be arrested, held to trial, tried, convicted, fined, and imprisoned at hard labor, and this obviously not for any taint of criminality in the transaction out of which the debt arose, but purely and simply *for the nonpayment of the debt.*" Carr v. State, 106 Ala. 35, 39, 40, 17 So. 350, 351, 34 L. R. A. 634, 54 Am. St. Rep. 17.

This last case has not been departed from in this jurisdiction. In Bailey v. State, 161 Ala. 75, 81, 49 So. 886, 888, Mr. Justice Denson said of that case:

"The Carr Case arose under a statute dissimilar to the one sub judice, as will be seen from a reading of the two statutes. The statute in that case held void sought to make the mere receiving, by a bank officer, of money for deposit, with knowledge at the time that the bank was in a failing or insolvent condition, a misdemeanor. It not only disregarded the intent of the person receiving the money, but provided that the fine which might be assessed on conviction should not be less than double the amount of the deposit. * * *"

The last-named case was taken by writ of error to the Supreme Court of the United States, and the decisive opinion is to be found reported as Bailey v. State of Alabama, 219 U. S. 219, 31 S. Ct. 145, 55 L. Ed. 191, 196, 198, 199. The decision by this court (161 Ala. 75, 49 So. 886), upholding the constitutionality of the statute (Gen. Acts 1907, p. 637), as against the attack made thereon as providing imprisonment for debt or for involuntary servitude and denying due process of law, was reversed by the Supreme Court of the United States. In that case Mr. Justice Hughes recites the statutes of Alabama (Code 1896, § 4730, as amended in 1903 [Gen. Acts, p. 345] and 1907 [Gen. Acts, p. 637]), states the legal effect of the amended statute, quotes from Ex parte Riley, 94 Ala. 82, 10 So. 528, the rule of evidence obtaining in this court, "There is also a rule of evidence enforced by the courts of Alabama, which must be regarded as having the same effect as if read into the statute itself, that

the accused, for the purpose of rebutting the statutory presumption, shall not be allowed to testify 'as to his uncommunicated motives, purpose, or intention,' [Bailey v. Alabama] 161 Ala. 77, 78, 49 So. 886;" makes observations of that statute as follows: "'A mere breach of a contract is not by the statute made a crime. The criminal feature of the transaction is wanting, unless the accused entered into the contract with intent to injure or defraud his employer, and unless his refusal to perform was with like intent and without just cause. That there was an intent to injure or defraud the employer, both when the contract was entered into and when the accused refused performance, are facts which must be shown by the evidence. As the intent is the design, purpose, resolve, or determination in the mind of the accused, it can rarely be proved by direct evidence, but must be ascertained by means of inferences from the facts and circumstances developed by the proof. Carlisle v. State, 76 Ala. 75; Mack v. State, 63 Ala. 138. In the absence, however, of evidence from which such inferences may be drawn, the jury are not justified in indulging in mere unsupported conjectures, speculations, or suspicions as to intentions which were not disclosed by any visible or tangible act, expression, or circumstance. Green v. State, 68 Ala. 539.' See, also, Dorsey v. State, 111 Ala. 40, 20 So. 629; McIntosh v. State, 117 Ala. 128, 23 So. 668"— and replies thereto that "it is no answer to say that the jury must find, and here found, that a fraudulent intent existed. The jury by their verdict cannot add to the facts before them. If nothing be shown but a mere breach of a contract of service and a mere failure to pay a debt, the jury have nothing else to go upon, and the evidence becomes nothing more because of their finding. Had it not been for this statutory presumption, supplied by the amendment, no one would be heard to say that Bailey could have been convicted. Prima facie evidence is sufficient evidence to outweigh the presumption of innocence, and, if not met by opposing evidence, to support a verdict of guilty. 'It is such as, in judgment of law, is sufficient to establish the fact, and, if not rebutted, remains sufficient for the purpose.' Kelly v. Jackson, 6 Pet. [622], 8 L. Ed. 526." The facts of the Bailey Case are adverted to in conclusion by Mr. Justice Hughes as follows:

"Was not the case the same in effect as if the statute had made it a criminal act to leave the service without just cause and without liquidating the debt? To say that he has been found guilty of an intent to injure or defraud his employer, and not merely for breaking his contract and not paying his debt, is a distinction without a difference to Bailey. Consider the situation of the accused under this statutory presumption. If, at the outset, nothing took place but the making of the contract and the receipt of the money, he could show nothing else. If there was no legal justification for

his leaving his employment, he could show none. If he had not paid the debt, there was nothing to be said as to that. The law of the state did not permit him to testify that he did not intend to injure or defraud. Unless he were fortunate enough to be able to command evidence of circumstances affirmatively showing good faith, he was helpless. He stood stripped by the statute of the presumption of innocence and exposed to conviction for fraud upon evidence only of breach of contract and failure to pay."

In application of the foregoing to the statute, tested by organic law, it is noted that a prima facie presumption created by the Legislature in practical effect might prove conclusive or irresistible, and strip a defendant, by reason of such statute, "of the presumption of innocence" (Bailey v. Alabama, 219 U. S. 219, 234, 31 S. Ct. 145, 55 L. Ed. 191, 198), and expose him to conviction for fraud, *when fraud has not been shown*, but merely that there was not sufficient money in the bank to cover the check, order, or draft, *not at the time the same was drawn*, but *at the time the same was presented for and refused payment*. It is not the implication that there were sufficient funds in bank when the check, order, or draft was drawn to warrant payment that affects the present question; that question being the constitutionality vel non of a law which makes one fact prima facie evidence of a *fraudulent intent*, without providing that the accused may give in evidence his circumstances and *uncommunicated intent* when so acting, which in reality deprives the accused of the right to make full answer to the accusation supported by the prima facie rule of evidence created by the statute. Bailey v. Alabama, 219 U. S. 219, 31 S. Ct. 145, 55 L. Ed. 191; Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463.

In Holmes v. State, 136 Ala. 80, 34 So. 180, McCormick v. Joseph, 77 Ala. 236, Wheless v. Rhodes, 70 Ala. 419, Whizenant' v. State, 71 Ala. 383, and Burke v. State, Id. 377, the fact is touched upon that the defendant is not allowed to testify to his uncommunicated motives, purpose or intention, and such is not allowed under the statute for the purpose of rebutting the statutory presumption. Bailey v. State, supra. A casual examination of the statute (Acts 1921, p. 47) discloses that it is not the fact that the drawer or maker has not on deposit sufficient funds to cover the instrument at the time it is drawn or made, but the fact that there are not sufficient funds on deposit with the drawee *at the time that instrument is presented for and refused payment*, which is prima facie evidence of a fraudulent intent. Even though there were sufficient funds with the drawee at the time the instrument was executed, if, at the time it is presented by the payee, the defendant has not such funds on deposit and

payment is refused, he is made prima facie guilty of a *fraudulent intent*. And so of a postdated check or order that is not paid by the drawee, on the other hand, though such funds were nonexistent when the instrument was drawn or delivered, but were sufficient, when presented, to warrant payment, or, if payment is made, no prima facie evidence of a fraudulent intent exists, or no such presumption could be indulged against the defendant. This is sufficient to illustrate the effect of the statute which declares the prima facie evidence of a fraudulent intent, *not based on the existence of a fact*, but upon a future contingency to which other parties than the defendant might contribute—as (1) the payment vel non when presentment is made; or (2) the giving of the required notice of dishonor. The federal rule is thus expressed:

"That' a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law, it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not,' under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed. If a legislative provision, not unreasonable in itself, prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that·due process of law has been denied him." Mobile, J. & K. C. R. R. Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 80, 81, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463.

What, then, is the last expression of the legislative will in this state on the subject for decision? Acts 1915, p. 319, is included in the Code of 1923 as sections 4159, 4160, and Acts 1921, p. 47, is not adverted to by the recess code committee of the Legislature. Thus the legislative expression of the public policy of the state is that the rule of evidence contained in Acts 1915, p. 319, shall prevail. That rule is in accord with the foregoing federal decisions. It is:

"That upon the trial of any person charged with violating this act, the defendant shall be a competent witness to testify to his circumstances and intent when he drew the check or draft." Acts 1915, p. 319, § 2; Code 1923, § 4160.

Acts 1921, p. 47, in the use of the words "which is not paid by ·the drawee" and "where the same is not refunded or restored * * * on written demand," convinces us that the purpose of this law was to furnish an adequate remedy for the collection, by means of a threat of prosecution, of a worthless check, and was not enacted for the pur-

pose of punishing a violator of a law against frauds. Stated in other words, no other reasonable construction can be placed upon the statute when, by its express terms, no obtaining of moneys with a fraudulent intent can exist until there is a failure of the drawee to pay, or, after failure of payment, a written notice of dishonor is given the drawer by mailing to his "last known address," and thereafter the drawer fails to make payment of such sum before the expiration of the seven days' notice provided.

It seems to us that the decisions of Carr v. State, 106 Ala. 35, 17 So. 350, 34 L. R. A. 634, 54 Am. St. Rep. 17, and Bailey v. State of Alabama, 219 U. S. 219, 31 S. Ct. 145, 55 L. Ed. 191, are conclusive of the unconstitutionality of the act approved November 1, 1921 (Acts Sp. Sess. p. 47).

All the Justices concur.

Under the authority of the Supreme Court of Alabama, in response to the inquiry submitted, the judgment of the lower court appealed from is reversed. As there can be no conviction under the indictment in this case, a judgment is here rendered discharging the defendant from further custody in this proceeding.

Reversed and rendered.

### Additional Response by Supreme Court on Rehearing.

·THOMAS, J. Distinguished counsel urges that a question of jurisdiction is for decision. Under the codification of the acts of 1911 defining the jurisdiction and powers of the Court of Appeals (Acts 1911, pp. 95, 499, codified as sections 7310, 7322), it is urged, the Court of Appeals having certified the question of the constitutionality of a statute, thereupon it should have required the ·transcript and all papers in said cause to be transmitted to this court, and that all proceedings thereafter be in this court "as if said cause had been appealed originally to said Supreme Court."

[2] To a full understanding of the question before us it should be noted that the former statute "to establish the Court of Appeals," among other things, provided:

" * * * That if the validity of a statute of this state or of the United States is involved said Court of Appeals shall so certify and thereupon the transcript and all papers in said cause, with such certificate shall be transmitted to the Supreme Court and all proceedings conducted thereafter as if said cause had been appealed originally to said Supreme Court: Provided, further, that if the judges of said court are unable to reach a unanimous conclusion, or decision, in any case or matter before them, any one of said judges may certify to the Supreme Court any question or questions of law as to which said judges differ, stating such questions as abstract propositions, and the Supreme Court shall give its opinion upon the question so certified, and the opinions thus given by the Su-

preme Court shall be given the same effect by said Court of Appeals as it is required to give to the decisions of said Supreme Court." Acts 1911, p. 96.

The latter act had for its purpose the regulation of appeals and the construction of the validity of statutes by the Supreme Court and the Court of Appeals, and it contained the provision:

"That before the Court of Appeals should strike down any statute, federal or state, not previously nullified by the Supreme Court, the question involving the validity of same must be submitted to the Supreme Court for determination, the result shall be transmitted to the Court ·of Appeals, which said court shall be controlled in its decision by the determination of the Supreme Court: Provided, however, that when a statute has been assailed upon constitutional grounds, in the Court of Appeals, and is upheld by said court, the aggrieved party may review the ruling of the Court of Appeals in this particular, by a writ of error to· the Supreme Court, unless the question was previously submitted .to the Supreme Court by the Court of Appeals." Acts 1911, p. 449.

Thus the last act was a modification of the first in respect to the question, not of jurisdiction to declare a statute, state or federal, unconstitutional, but of the procedure to judgment after the constitutionality vel non of the statute has been declared by this court; that is to say, the acts before us, in legal effect, have been. treated by this court and the Court of Appeals, in the due procedure of many causes, to the ascertainment of the constitutionality vel non of a statute necessary to a decision of a pending cause within the jurisdiction of the Court of Appeals, where the attack on the statute had not theretofore been settled by this court. The construction, by way of implication, by this court of certifications by the Court of Appeals, of the constitutionality vel non of many important statutes, and the replies thereto transmitted to the Court of Appeals, and thereafter the procedure to judgments in the latter court in accordance with our decision in the premises, was before the adoption of the Code of 1923.

For this due procedure to judgment in the Court of Appeals there is authority. Banks v. State, 207 Ala. 179, 93 So. 293, 24 A. L. R. 1359; State v. Williams, 207 Ala. 517, 93 So. 381; State v. Goldstein, 207 Ala. 569, 93 So. 308; L. & H. R. Co. v. State (Headlight Case) 16 Ala. App. 199, 76 So. 505, 510; Western U. T. Co. v. Beasley, 205 Ala. 115, 87 So. 858; Acuff v. Weaver, 17 Ala. App. 532, 86 So. 167; Thomas v. State, 16 Ala. App. 145, 75 So. 821; Hudgens v. State, 15 Ala. App. 156, 72 So. 605; Rogers v. White, 14 Ala. App. 482, 70 So. 994; McLendon v. State, 6 Ala. App. 19, 60 So. 406; Id., 179 Ala. 54, 60 So. 392, Ann. Cas. 1915C, 691; Lovejoy v. City of Montgomery, 9 Ala. App. 466, 61 So. 600; Id., 180 Ala. 473, 61 So. 597. When this court decides the

question propounded by the Court of Appeals as to the constitutionality vel non of a statute, and the response thereto is certified to the Court of Appeals, it is within its established jurisdiction (and according to the statute and procedure heretofore established and acted upon by the two courts) to proceed to the final judgment in said pending cause, under the statute as construed by this court.

[3] We may add to the original opinion that we entertained no doubt of the constitutionality of the Act of 1915, codified as sections 4159, 4160, of the Code of 1923, providing punishment for fraud or misrepresentations which amount to false pretense in the matter indicated, and this was and may be done within the provisions of state and federal Constitutions.

This response will be certified to the Court of Appeals.

Application overruled.

All the Justices concur.