LEIGH M. CLARK, Supernumerary Circuit Judge.
Appellant was charged with obtaining personal property by false pretense, a crime made punishable as if it were larceny. Code of Alabama 1940, Tit. 14, § 209. The indictment substantially followed the language prescribed by Tit. 15, § 259, Form 60. The value of the property, several items of clothing, was alleged in the indictment and shown by the evidence to have been four-five times twenty-five dollars, the minimum requirement in value for grand larceny, which is punishable by imprisonment in the penitentiary for not less than one nor more than ten years. Code of Alabama, Tit. 14, § 331.
Upon return of a verdict of guilty, the court sentenced defendant to imprisonment in the penitentiary for ten years.
Evidence for the State was that defendant obtained the items of merchandise alleged in the indictment and charged them to Barbara Owens; that defendant signed the charge slip, which had on it (in printed handwriting, not that of defendant), “David Owens” and in parenthesis “Barbara.” The salesman, the owner and operator of the establishment known as “Parkers,” which has a store in Auburn, the city of the alleged offense, and another store in Opelika, testified that defendant “said he wanted to charge them to David Owens and we looked up the account and there is no David Owens in the accounts and he told me to — it’s in the name of ‘Barbara Owens.’ ”
Barbara Owens did have an account at Parkers; she testified she did not know defendant.
There was other incriminating evidence, including testimony of a sales clerk at the Opelika store of Parkers that on a previous occasion, about ten days before, defendant had purchased merchandise from her and told her to put it on the account of Barbara Owens, which she did, and testimony of a police officer that after apprehension of defendant at Parkers at Opelika, three days after the alleged crime and after a full explanation to defendant of his rights, defendant stated that he “and Barbara Owens were cousins” and that they had a joint account at Parkers.
In defendant’s testimony, he admitted purchasing the goods, taking them home with him, but he denied that he had requested that they be charged to anyone other than himself. His testimony was, “I requested them to charge them to myself, not to no one else, not to Barbara Owens, to my own.” He further denied that he had told the police officer that he and Barbara were cousins and that he and she had an account at the particular commercial establishment.
The direct conflict in the evidence as to what took place in connection with the purchase of the merchandise alleged in the indictment on which defendant was tried presented a jury question as to the guilt of *862 defendant. If they believed defendant’s testimony, he was not guilty. On the other hand, if they disbelieved his testimony as to what he said and did, and believed the testimony of the owner of Parkers, another salesman of Parkers and the testimony of the police officer, the jury could find therefrom that defendant falsely pretended, with intent to defraud, that he was authorized to charge the purchase of merchandise to the account of Barbara Owens and that by means of such false pretense he obtained the merchandise. It is not contended otherwise on appeal.
On direct examination of defendant, he was asked the following question: “State whether or not on any of these three times that you were in Parker’s, that it was your intention to injure or defraud someone in order to obtain these goods?” There was an objection by the State, but defendant answered, “No, sir.” before there was a ruling on the objection. However, the court sustained the objection, and upon motion of the State excluded the answer. To this action of the court defendant’s counsel expressly excepted and urges on appeal that the same constituted reversible error.
A correct decision of the particular question requires a consideration of the rule once obtaining in Alabama to the effect that a witness could not testify on direct examination as to his uncommunicat-ed state of mind, and the recent overruling of cases that so held, in Starr v. Starr, 293 Ala. 204, 301 So.2d 78, and subsequent cases following the lead of Starr v. Starr. In the highly regarded opinion in that case, it was stated:
“We now hold that a witness, on direct examination, may testify as to his intention, motive or other physically unexpressed mental state, provided that the testimony is material to the issues in the case. This is another area where the sound discretion of the trial judge will come into play. Thus we will not review the court’s ruling in either admitting or excluding such evidence in the absence of abuse. To the extent Low v. Low [255 Ala. 536, 52 So.2d 218], and other cases conflict with this point, they are hereby overruled.” (2d emphasis supplied)
We take this statement as our Polaris in this case. We have applied it in Roynica v. State, 54 Ala.App. 436, 309 So.2d 475; Thornton v. State, 55 Ala.App. 462, 316 So.2d 710; Armstead v. State, 57 Ala.App. 459, 329 So.2d 150.
Starr v. Starr and Tolbert v. State, 294 Ala. 738, 321 So.2d 227, are now working in tandem in that order. Appellant argues that a defendant “should be free to testify as to his intent and mental process to rebut the evidence offered by the State or any inferences drawn therefrom, and cites Tol-bert in support of the argument. Tolbert did not so hold. It was stated therein:
“Thus, a defendant is free to testify as to his intent and mental process to rebut any presumption arising from the prima facie section of the Worthless Check Act. [Act No. 2479, Vol. 5, p. 3958, Oct. 1, 1971].”
The court was distinguishing Goolsby v. State, 213 Ala. 351, 104 So. 901, which held the then bad check law unconstitutional, in creating a presumption of fraudulent intent but leaving defendant, under the then extant rule of evidence, unable to testify as to his intent. The court in Tolbert logically concluded that what was held in Goolsby as to the bad check law no longer applied to a similar bad check law for that the reason for the holding was a rule of evidence that no longer applied, as held in Starr v. Starr. In order for such a law to be constitutional, defendant must be free to testify as to his intent and mental process to rebut any presumption arising from the particular law.
On the heel of Tolbert came Grimes v. State, 56 Ala.App. 439, 322 So.2d 729, cert. denied 295 Ala. 403, 322 So.2d 733, in which it was held that the trial court committed reversible error in sustaining the State’s objection to a question asked defendant on direct examination, on trial for assault with intent to murder his wife, “Did you intend to murder her?” The court did not overlook, but quoted from Starr to the effect that whether one should be allowed to testify on direct examination as to his unex *863 pressed intention or the like was in the area of a trial court’s discretion and “Thus we will not review the court’s ruling in either admitting or excluding such evidence in the absence of abuse.” An analysis of the particular situation resulted in the conclusion that defendant’s intent “was an outstanding and material issue before the jury” and that under the special circumstances of that case the action of the court constituted prejudicial error.
In the instant case, whether there was fraudulent intent was an issue raised by defendant’s plea of not guilty, but the transcendent issue of fact was as to what defendant did and said. If he did and said what the owner of the store, a saleslady, and a police officer, testified, as stated above, he could have been found not guilty, but there could have been little reasonable contention that he was not guilty. On the other hand, if their testimony was not true in this respect, if defendant’s testimony to the effect that he did not request that the items be charged to the account of anyone other than himself, he was not guilty. That issue was the battleground and there was no other area of genuine contest. Defendant’s categorical answer to the question propounded to him would hardly have been of much value, as defendant’s answer in Grimes would probably have been. To be consistent with both Starr and Grimes, we must say, that, although there are situations in which the trial court is required to admit in evidence on direct examination of a witness his uncommunicated state of mind, such a situation is not presented here, and the trial court was acting within its area of discretion, without abuse, in sustaining the State’s objection. It should be noted also that the question was broader than any possible issue in the case, in including the third occasion defendant was in a Parkers store, as to which there was no contention that there was any effort of defendant to commit any crime. There was neither error nor prejudice to defendant in the particular ruling of the court.
Of the twenty-seven written charges requested by defendant, the court gave nine and refused eighteen. Appellant seeks to predicate error upon the refusal of each of seven requested written charges.
Charge 15 mistakenly referred to “statements made by the accused to” a person other than the one to whom the alleged false pretense was made. It was inapplicable and properly refused.
Charge 13, in hypothesizing a belief of the jury, did not qualify the belief as one arising from, or based upon, the evidence. It was properly refused. Locklear v. Nash, 275 Ala. 95, 152 So.2d 421; Shadle v. State, 280 Ala. 379, 194 So.2d 538.
Charges 10 and 12 requiring a false or fraudulent representation as to an existing fact were substantially covered by portions of the court’s oral charge to that effect. The same is true as to charge 14.
On the authority of Gilmore v. State, 99 Ala. 154, 13 So. 536, in its treatment of charges 3 and 6 therein, which were held to have been erroneously refused, defendant urges the trial court was in error in refusing the following charge:
“Ladies and Gentlemen of the Jury, the Court instructs you that the evidence against the Defendant is partly circumstantial, and his innocence must be presumed by the Jury until the case against him is proved in all its material circumstances beyond a reasonable doubt, then you must continue to presume that the Defendant is innocent, and failure of the State of Alabama to prove the alleged offense in all of its material circumstances beyond a reasonable doubt, requires you to return a verdict of not guilty.”
The charge contains some of the language of the charges held to have been erroneously refused in Gilmore. A close reading of the charge reveals that it is different from such charges, that its meaning is different from that intended in the preparation of it and that it is involved and misleading. The trial court cannot be put in error for refusing written charges that are not free from involvement and misleading tendencies. Guenther v. State, 282 Ala. 620, 213 So.2d 679, cert. denied 393 U.S. 1107, 89 *864 S.Ct. 916, 21 L.Ed.2d 803; Kemp v. State, 278 Ala. 637, 179 So.2d 762; Lowe v. State, 54 Ala.App. 280, 307 So.2d 86.
Appellant complains also of the trial court’s refusal to give the following written charge requested by defendant:
“17. Ladies and Gentlemen of the Jury, the Court charges you that the intent to defraud is a necessary ingredient of the offense of false pretenses. Intent to injure without an intent to defraud is not sufficient to constitute the crime of false pretenses. If you should find that the defendant, David Owens, did not possess an intent to defraud, then it is your sworn duty to return a verdict of not guilty.”
The court, in various instances in its oral charge, stated that “intent to defraud” was an element of the crime. In one of the instances it said:
“Now, you will note that intent to defraud is a very important element of obtaining property by false pretense. The Court has told you that there are five elements and I have enumerated those five elements. Well, intent is one of those elements and a very important element.”
The statute proscribing the particular offense (Code 1940, Tit. 14, § 209) includes the element, “with the intent to injure or defraud.” Chief Justice Stone in Carlisle v. State, 76 Ala. 75 (1884) noted the difference between the language of the statutory crime and the language of the Code form (Form 48, Code of 1870, p. 996) and stated:
“The only injury that can be inflicted, ‘by any false pretense or token,’ by which one person ‘obtains from another any money or other personal property,’ is the deception which imposes on the confidence of that other. This is a fraud; and we cannot think the Legislature, in employing the word ‘injure,’ intended to express, or, considering the connection, could express more or less than is implied in the word ‘defraud.’ ”
Carlisle held that it was error for the trial court to refuse a written charge to the effect that the intent to defraud was a necessary ingredient of the offense, and the holding was followed in Hope v. State, 5 Ala.App. 123, 59 So. 326. The prescribed Code form in Tit. 15, § 259, (Form 60) states, “with intent to defraud.” The indictment in this ease followed the Code form and did not contain the words “injure or.” In the court’s oral charge the words “injure or defraud” are employed at times in defining or explaining the offense. The language “injure or defraud” is used in three or four instances in written charges given at the request of defendant. Defendant in the instant case asked for more than did defendant in Carlisle and Hope. In asking that the jury be instructed that the intent to defraud is a necessary ingredient, he was asking for no more than that to which he would ordinarily have been entitled, but which had been substantially given in the court’s oral charge. In asking for a distinction between intent to injure and intent to defraud, defendant would have been asking for a proper distinction if the words “fraud” and “injure” had been used in contrast, but when, as here, the words had been used synonymously, without protest and in fact at the solicitation of defendant, the distinction was without a difference, and the giving of the charge would have been confusing and without value to defendant. The position taken by defendant throughout the trial was that he said and did nothing by which he intended to defraud or injure. There was no contention that what he said or did was, or that it could have been, with an intent to injure but without intent to defraud. Following the language and the reasoning of Chief Justice Stone in Carlisle, “We cannot think” that the jury thought that the court, “. in employing the word ‘injure’ intended to express, or, considering the connection, could express more or less than is implied in the word ‘defraud.’ ” Charge 17 was refused without error prejudicial to defendant.
We have considered all questions raised by appellant and have fully reviewed the record in a search for any error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
*865 The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court, and the judgment appealed from is hereby
AFFIRMED.
TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., concur.