# Chauncey *v.* The State.

*Indictment for Obtaining Board by False Representation.*

1. *Obtaining board by fraud or misrepresentation; constitutionality of statute.*—The statute enacted for the protection of landlords, proprietors and keepers of hotels and boarding houses, making it a criminal offense to obtain board by fraud or misrepresentation (Code, '§ 4755), is not unconstitutional.

2. *Same; what necessary to authorize conviction.*—In order to convict under the statute making it a criminal offense to obtain board by false representation, (Code, § 4755), it is necessary to show that the misrepresentation was made before the board and lodging were furnished, and further that the proprietor or keeper of the hotel or boarding house relied upon such representation and was induced thereby to furnish the board and lodging, and as a consequence was deceived to his injury.

APPEAL from the City Court of Montgomery.

Tried before the Hon. W. H. THOMAS.

The defendant in this case was indicted and tried and convicted for obtaining board by false representation from a boarding house keeper.

The indictment contained two counts. In the first count the false representation charged was that the defendant represented that he was the supreme grand treasurer of the Knights of the Mystic Chain. In the second count the false representation was that the defendant had money to pay his board in the Merchants & Planters National Bank of Montgomery.

W. H. Maybin was named as the keeper of the boarding house in each of these counts.

On the trial of the case, W. H. Maybin testified that he and his wife jointly kept a boarding house; that

the defendant and another man came together to the boarding house kept by him and his wife; that the defendant made the terms for the board with the witness and assumed to pay the bills for himself and his companion; that after a few days elapsed the witness asked the defendant for the amount then due for their board, and the defendant told the witness that he (the defendant, was going to organize a branch lodge of the Knights of the Mystic Chain and out of the receipts obtained from the initiation fees he would settle his board bill; that the defendant did not do as he had promised to do, and afterwards the witness had another conversation with him, in which witness asked him for the payment of his board, and the defendant told him that the money to pay his board was in the Merchants & Planters Bank; that the defendant made this statement several times, but that his board bill was never paid. The witness Maybin further testified that he did not believe the statements made by the defendant that he had the money with which to pay his board. He further testified that one morning after the defendant had been boarding with him for some time, he told the witness that he was going to Birmingham, and upon witness declining to let him take his baggage from the house until he had paid his board bill, the defendant gave the witness a check on the Merchants & Planters National Bank, making the statement that the money was in the bank for the payment thereof; that the check was presented to the bank and was not paid.

The defendant, as a witness in his own behalf, admitted owing the board bill, but denied having made the statements testified to by the witness Maybin. He further testified that just before leaving for Birmingham he gave Maybin a check on the Merchants & Planters National Bank for the amount of his board, and that to cover this order he drew his draft on the Birmingham representative of the Knights of the Mystic Chain and left the draft at the Merchants & Planters Bank, and that arrangements were made to have the draft cashed; but that before this was done the defendant was arrested on a warrant sworn out by the witness Maybin,

and that thereupon defendant became indignant and stopped the payment of the order given on the Merchants & Planters National·Bank. This was substantially all the evidence.

The defendant, among others, requested the court to give to the jury the following written charge: "If the jury believe the evidence they must find the defendant not guilty." The court refused to give this charge, and the defendant duly excepted.

C. P. McIntyre, for appellant, cited *Carr v. State,* 106 Ala. 35; *Anthony v. State,* 29 Ala. 27; *State v. Plunkett,* 2 Stew. 11; *State v. Raiford,* 8 Port. 101; 10 Am. & Eng. Ency. Law, 576.

Chas. G. Brown, Attorney-General, for the State.

TYSON, J.—In *Ex parte King,* 102 Ala. 182, the act of February 21, 1893, comprising section 4755, was held to be constitutional. The court said: "The act is in line with our other statutes against false pretenses, fraud, cheats, acts to injure and the like. One who violates the act, is imprisoned not for the debt he owes the proprietor, and not to make him pay it, but to punish him for a wrong he has perpetrated, which is made a crime. And, this is no more of a special privilege to the hotel-keeper, than the statute against burglary from a store or dwelling, is to the merchant who owns the store, or to the owner of the dwelling."

The statute dealt with in *Carr v. The State,* 106 Ala. 35, is materially different, and, indeed, entirely different with respect to the question involved in it, from the one here under consideration, and that case does not conflict with *King's Case.* The statute is not unconstitutional.

The purpose of this statute is to punish such persons who by fraud induce the proprietor or keeper of a hotel or boarding house to furnish board or lodging, and fail or refuse to pay for the same. If misrepresentations are relied upon as the inducement for the furnishing by the proprietor of the board or lodgings, they must, of necessity, have been made before the board is furnished. If made after the board has been obtained, they could

not have possibly induced the furnishing of it. Again, the misrepresentation must have been relied upon by the proprietor and have been the controlling inducement to his furnishing the board and lodging. In short, the proprietor must be shown to have been deceived to his injury. If he knew the representations were false, or if he believed they were false, or if he did not believe the statement or representation to be true, or if he believed the representation, but if they had no influence upon his conduct, no deception was practiced. These essentials are requisite to the maintenance of a civil action or defense predicated upon false representations, and surely nothing less should suffice to support a criminal prosecution.

This statute is analogous in its essential features to the one making it a crime to obtain property by false pretenses (§ 4729)—the two belonging to the same family and are closely allied in nature, character and purposes. They are so classified in the Code as shown by the title to the article in which they are found.—Chap. 154, Art. 1, of Crim. Code, p. 267. Under this statute, it has never been supposed that the false pretense, to be indictable, should not have deceived. Deception and injury are of the very essence of the crime.—*Colly v. State,* 55 Ala. 85; *Woodbury v. State,* 69 Ala. 242. On the undisputed evidence, the defendant was entitled to have the affirmative charge, requested by him, given.

Reversed and remanded.