The appellant was indicted and convicted for defrauding an innkeeper in violation of Ala. Code § 34-15-18 (1975). The trial court fixed his punishment at two years in the state penitentiary.
The crux of this appeal concerns the sufficiency of the State's evidence. The State presented a single witness, Ms. Shelby Allred, the motel manager of the Decatur Inn, and at the conclusion of her testimony rested its case. The appellant made a timely motion to exclude the evidence on the ground the State failed to prove a prima facie case. Thus, we must decide whether Ms. Allred's testimony, standing alone, is sufficient to establish the elements of the crime charged.
The following three code sections, which are quoted in their entirety, are pertinent to this case. The first, Ala. Code §34-15-18 (1975), defines the offense and punishment:
 "Any person who, by fraud or misrepresentation, or with the intent to deceive or defraud, obtains food or lodging or other accommodation from any hotel, boardinghouse or eating house and fails or refuses to pay for the same must, on conviction, be fined not more than $1,000.00 and may also be sentenced to hard labor for the county for not longer than 12 months, when the value of such food, lodging or other accommodation was $25.00 or less; but when such value is more than $25.00, then such person shall be punishable in the manner prescribed by law for punishing persons guilty of grand larceny."
The second, Ala. Code § 34-15-19 (1975), describes some possible ways, but not the exclusive ways, prima facie evidence of §34-15-18 may be established:
 "Proof that food, lodging or other accommodation was obtained by false pretense or by false or fictitious show or pretense of any baggage or other property by such person obtaining such food, lodging or other accommodation, or that such person absconded or left the state without paying or offering to pay for such food, lodging or other accommodation, or that such person gave in payment, or in part payment, for such food, lodging or other accommodation any check or draft on which check or draft payment was refused on due presentation or that such person surreptitiously removed, or attempted to remove from such hotel, boardinghouse or eating house the baggage or other property brought with him thereto without having paid, or offered *Page 1171 
to pay, for such food, lodging or other accommodation so furnished him shall be prima facie evidence of the fraud or misrepresentation, or intent to deceive or defraud, mentioned in section 34-15-18. No person shall be convicted under the provisions of section 34-15-18 where there has been an express agreement to delay payment for such food, lodging or other accommodation until a date after such person terminates his relation as a guest at such hotel, boardinghouse or eating house."
The third, Ala. Code § 34-15-20 (1975), is the posting requirements of §§ 34-15-18 and 34-15-19:
 "Every hotelkeeper and innkeeper in this state shall keep a copy of sections 34-15-18 and 34-15-19, printed in distinct type, posted in the lobby, public waiting room or in that portion of his hotel or inn most frequented by the guests thereof, and no conviction shall be had under the provisions of sections 34-15-18 and 34-15-19, until it shall have been made to appear that a copy of sections 34-15-18
and 34-15-19, was posted as above provided in the hotel or inn, the owner or keeper of which claims to have been defrauded at the time such food, lodging or other accommodations were obtained."
Ms. Allred testified that when the appellant first registered at the Decatur Inn on June 10, 1978, he was advised that he was to pay his bill each day by 2:00 p.m. She said he complied with that rule for about ten days, but then started paying every other day until the latter part of June when he began skipping several days with his payments. Around the middle of July, he went to Ms. Allred and asked to pay his bill weekly due to the fact that it was interfering with his meetings. She agreed provided the bill "did not exceed around $200.00 within that week's period."
Ms. Allred testified that appellant paid his bill on August 7, but did not pay again until August 24 after being asked to pay several times. Ms. Allred stated that the August 24 payment was the last payment she received until the present criminal action was instituted on September 25. The appellant's bill on that date was $1,033.99.
Ms. Allred stated that when the appellant made the August 24 payment he represented he would still pay on a weekly basis and that she relied upon his representations. Subsequent to August 24 and prior to filing charges, Ms. Allred discussed the appellant's bill "several times with him." Finally, after criminal charges were filed, the appellant made a partial payment on October 12 and paid the remainder on October 23. Ms. Allred noted that §§34-15-18 and 34-15-19 were posted in the motel rooms.
On cross-examination Ms. Allred testified that between June 10 and August 1 the appellant was "not much later than a day or two in paying his bill. Between August 7 and August 24, when the appellant and Ms. Allred discussed his bill, the appellant told her "he was having problems with his company, the Southern Christian Leadership Conference, sending him his check," but that he would pay his bill.
After the August 24 payment, Ms. Allred stated that she closed out the appellant's account on September 21 and padlocked his room subsequent to her talking to him for the last time about his bill. Appellant repeatedly told Ms. Allred he would pay his bill, but she said she "just quit believing he would" around the middle of September. Ms. Allred testified that at no time was the agreement changed which allowed the appellant to pay on a weekly basis.
Ms. Allred stated that she also talked with the appellant's "firm," the Southern Christian Leadership Conference, about his bill subsequent to July. She at no time asked the appellant to move out. She told him approximately one week before she filed charges that she wanted her money and did not want to file a complaint against him. "He promised me several times to pay it . . . He told me he would be in-every day he would call and say he would be in like so and so, that day or the next day, and he never did show up . . . It seems like I told him on the 21st . . . I would have to file a warrant on him." *Page 1172 
On redirect examination Ms. Allred stated that after the September 21 conversation the appellant "still failed and refused to pay the bill." She further stated that the appellant made appointments to pay the bill "almost daily," but failed to show up.
On recross-examination Ms. Allred testified that the appellant did not "refuse" to pay his bill, that he simply "failed" to pay it and "failed" to keep his promise to pay it. She stated that the appellant would sometimes "show up," but without any money.
 "Q. But he came. Did he tell you he didn't have the money? He told you he couldn't pay you, didn't he?
 "A. He didn't tell me anything. He just didn't pay it."
Based on the above testimony, the State's case must either stand or fall. Viewing the evidence in the most favorable light to the State, as we are required, Bass v. State, 55 Ala. App. 88,313 So.2d 208 (1975), we find it insufficient to prove a prima facie case.
We have found a paucity of cases decided under the statute in question-only three to be exact: Ex parte King, 102 Ala. 182,15 So. 524 (1894); Chauncey v. State, 130 Ala. 71, 30 So. 403
(1901), and Stallworth v. State, 157 Ala. 3, 48 So. 107 (1908). In Ex parte King, supra, the statute was declared constitutional:
 "There is nothing in the point raised in the application, that the act, `For the protection of landlords, proprietors or keepers of hotels and boarding houses,' . . . is violative of sections 21 and 23 of Art. I of the constitution, which forbid imprisonment for debt, or the making of laws giving any special privileges or immunities. The act is in line with our other statutes against false pretenses, frauds, cheats, acts to injure, and the like. One who violates the act, is imprisoned not for the debt he owes the proprietor, and not to make him pay it, but to punish him for a wrong he has perpetrated, which is made a crime. And, this is no more of a special privilege to the hotel-keeper, than the statute against burglary from a store or a dwelling, is to the merchant who owns the store, or to the owner of the dwelling." (Emphasis added.) 102 Ala. at 183, 184, 15 So. 524.
The constitutionality of the statute was again upheld inChauncey, supra:
"The statute is not unconstitutional.
 "The purpose of this statute is to punish such persons who by fraud induce the proprietor or keeper of a hotel or boarding house to furnish board or lodging, and fail or refuse to pay for the same. . . ." 130 Ala. at 73, 30 So. 403.
It was also emphasized in Chauncey, supra, that the offense now codified in § 34-15-18 and the crime of false pretenses are not one and the same, but are merely analogous. "This statute isanalogous in its essential features to the one making it a crime to obtain property by false pretenses . . . the two belonging to the same family, and are closely allied in nature, character, and purpose." (Emphasis added.) 130 Ala. at 74, 30 So. 403.
Alabama, however, is not unique in recognizing the need for criminal legislation for the protection of the innkeeper or hotel owner against fraudulent guests. Indeed, every state in the union and the District of Columbia have enacted legislation to combat this evil. A complete addendum of those statutes is contained in the appendix to this opinion. It should be noted that much of the legislation directed toward those who defraud innkeepers had been enacted or revised recently. Some of the original such statutes have been repealed and replaced with theft of services statutes which pay special attention to hotel or lodging accommodations. All such statutes require an intent to defraud, and many statutes, like our own, include "prima facie" provisions specifying that proof of certain enumerated acts by the accused will raise a rebuttable presumption of fraudulent intent.[1] *Page 1173 
The validity of these statutes has been upheld, as against contentions that they violate the constitutional provisions of equal protection, or freedom from imprisonment for debt, or that they make the failure to pay a contractual debt a crime. 43 A C.J.S. Inns, Hotels, etc. § 12 (1978).
Turning our attention now to our statute[2] in particular, which is worded in the disjunctive, it would be an easy matter to show that appellant "represented" to Ms. Allred that he would pay his bill on a weekly basis and then simply "failed" to pay as promised. Such action on his part, without more, would not amount to an offense under § 34-15-18. If such action were a crime, without a fraudulent intent, it would be unconstitutional in that it would punish persons by imprisonment for the mere failure to pay a debt.
It is obvious that the "misrepresentation" referred to in §34-15-18 is a fraudulent misrepresentation. Justice Tyson wrote at length in Chauncey, supra, concerning misrepresentation:
 "If misrepresentations are relied upon as the inducement for the furnishing by the proprietor of the board or lodgings, they must, of necessity, have been made before the board is furnished. If made after the board has been obtained, they could not have possibly induced the furnishing of it. Again, the misrepresentation must have been relied upon by the proprietor and have been the controlling inducement to his furnishing the board and lodging.
In short, the proprietor must be shown to have been deceived to his injury. If he knew the representations were false, or if he believed they were false, or if he did not believe the statement or representation to be true, or if he believed the representation but if they had no influence upon his conduct, no deception was practiced. . . .
 "Deception and injury are of the very essence of the crime. . . ." (Emphasis added.) 130 Ala. at 73, 74, 30 So. 403.
Stated another way, for "misrepresentation" to constitute "fraud," it must be a false statement of a material fact intentionally made to induce another party to act in reliance on the truth of the statement, Hale v. Hale, 57 Ill. App.3d 730, 15 Ill.Dec. 85, 90, 373 N.E.2d 431, 436 (1978), and to rely to his detriment or injury. Neuhaus v. Kain, 557 S.W.2d 125, 136
(Tex.Civ.App. 1977). "Fraud" cannot be predicated solely on the failure to perform a promise to do something in the future.Pelletier v. Pelletier, 29 Or. App. 717, 565 P.2d 388, 391 (1977). It is because the intent to defraud must be proven in order to convict an accused that prosecutions for defrauding innkeepers do not conflict with the constitutional prohibition of imprisonment for a civil debt. State v. Barbee, 187 N.C. 703, 122 S.E. 753
(1924). Thus, the central issue before us is whether there is evidence that appellant intended to defraud Ms. Allred.
Before proceeding further we should examine the facts inChauncey, supra. In that case the defendant "made the terms" with the proprietor "to pay the bills for himself and his companion." After a few days the proprietor asked the defendant to pay up. The defendant told the proprietor that he was going to organize a branch lodge of the "Knights of the Mystic Chain" and out of the initiation fees pay his bill. "[T]he defendant did not do as he had promised to do," and the proprietor again asked him to pay up. The defendant then told the proprietor several times that the money was in the bank, but never paid his bill. Of crucial importance in Chauncey, however, and the fact which caused reversal of that defendant's conviction, was the proprietor's testimony that he did not believe the statements made by the defendant that he had the money with which to pay his board. Since the proprietor did not believe *Page 1174 
the defendant's representation, "no deception was practiced."
From the evidence in the instant case, if fraud existed it must have occurred some time during a four week period-from August 24, when weekly credit was extended again, until around September 21, when Ms. Allred "just quit believing" he would pay. This is so because on August 24, when the appellant paid his bill Ms. Allred was evidently satisfied with the payment and agreed to continue a weekly pay arrangement. And per Chauncey, supra "no deception was practiced" after September 21 because Ms. Allred then had no expectation that appellant would ever pay. Therefore, any fraudulent misrepresentations had to occur between August 24 and September 21 and not before or after those dates.
It should be recognized that fraudulent intent need not be proven by direct substantive evidence, but can be inferred from the accused's conduct and the circumstances of the case. 37 Am.Jur.2d Fraud and Deceit § 439 (1968); State v. Wagenius,99 Idaho 273, 581 P.2d 319, 327 (1978). When a material element of a crime is the fraudulent intent of the accused, both the State and the accused are allowed broad scope in introducing evidence with even the slightest tendency to establish or negate such intent, including evidence of similar fraud. Brooks v.Commonwealth, 220 Va. 405, 258 S.E.2d 504 (1979). It has been said that the fertility of man's invention in devising new schemes of fraud is so great that courts have been reluctant to define it, reserving to themselves the liberty to deal with it in whatever form it may present itself. 37 Am.Jur.2d Fraud andDeceit § 1 (1968). Intent to defraud is a question of fact for the jury to be determined from all the facts and circumstances of the case. People v. Hedrick, 265 Cal.App.2d 392, 71 Cal.Rptr. 352
(1968). However, before a jury is permitted to find a verdict of guilty where fraudulent intent is an element of the crime, there must be in connection with the act dome attending circumstances which bespeak fraud, a situation where common experience finds a reliable correlation between the act and the corresponding intent. State v. Inscore, 592 S.W.2d 809 (Mo. 1980). The State must prove more than the mere failure, refusal, or inability to pay in order to establish a fraudulent intent.Easterling v. State, Miss., 194 So. 289 (1940); Robinson v.State, 135 Miss. 774, 100 So. 377 (1924).
 "Since such statutes are penal in nature, they are subject to strict construction, and will not be applied to persons, acts, or omissions not coming within their terms. A mere failure, refusal, or inability to pay does not constitute the offense contemplated by the statutes. Such a statute requires specific intention on the part of the wrongdoer, which cannot be inferred solely from the naked fact of nonpayment. The intention must exist at the time the board or other accommodation is obtained. A conviction cannot be had in the absence of fraud on the part of accused. Where false representations are relied on as the inducement for the furnishing of board, they must have been made before, rather than after, the board is obtained. . . ." (Footnotes omitted.) 43 A C.J.S. Inns, Hotels, etc. § 12 (1978).
There was certainly no evidence tending to make out a prima facie presumption of fraud pursuant to Code § 34-15-18, supra. There is no contention on the part of the State (1) that accommodations were obtained by a false or fictitious show of baggage, (2) that appellant absconded or left the state without paying, (3) that appellant gave a "bad check" in payment or (4) that he surreptitiously removed his baggage or attempted to do so.
The State never proved a misrepresentation by the appellant to Ms. Allred, and neither did the State prove that she relied upon a misrepresentation between August 24 and September 21. Ms. Allred testified that:
 "After the 24th I received no payment and September 21st his bill was over a thousand dollars and I questioned him on his bill and he told me that he was expecting a check from his company to take care of it, which he was missing. He had *Page 1175 
not received it, and I suggested to him that he stop payment on it and have them to issue him another check where he would pay the bill. He said he contacted his company and they would issue him another check. After a week I had still not heard from him and he had not paid his bill and I had no other choice. I felt like I had no other choice but to file charges on him." (Emphasis added.)
On September 21 Ms. Allred "quit believing" appellant would pay, and she padlocked his room with all his belongings inside. She apparently did not believe his explanation concerning the delayed Southern Christian Leadership Conference check because she denied further accommodations to him on that date and on September 25 she filed the instant charge against him. The evidence therefore shows only a failure to pay during the August 24-September 21 period.
At the end of the State's case in chief, the defense moved to exclude the State's evidence for failure to prove a prima facie case. In testing the sufficiency of the evidence, we may only consider the evidence which was before the trial court at the time the motion was made, i.e. the testimony of Ms. Allred. Kentv. State, 367 So.2d 508 (Ala.Cr.App. 1978), cert. denied,367 So.2d 518 (Ala. 1979). The evidence only shows that appellant promised to pay on each inquiry of Ms. Allred between August 24 and September 21, and on the latter date explained that a check from the Southern Christian Leadership Conference was missing. There is no showing by the State that during that period the appellant knew he had no check due him or coming to him from that organization. His explanation for the late payment was never disputed. There was no showing that the appellant knew when he repeatedly promised future payment that he had no means with which to pay. The record is void as to why he failed to pay other than his explanation to Ms. Allred concerning the Southern Christian Leadership Conference check. Therefore, in order to reach the conclusion that appellant had a fraudulent intent, a jury would have to resort to speculation and conjecture rather than rely upon the evidence. The State, therefore, failed to prove a prima facie case, and the appellant's motion to exclude should have been granted. By mandate of the United States Supreme Court in such instances, the case must be reversed and rendered.Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1
(1978); Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151,57 L.Ed.2d 15 (1978).
REVERSED AND RENDERED.
All the Judges concur.
[1] Comment, Fraud on the Innkeeper. The Need for LegislativeReform, 16 U.Fla.L.Rev. 622, 625 (1964).
[2] Ala. Code § 34-15-18 (1975) was specifically repealed by Alabama's Title 13A Criminal Code which became effective on January 1, 1980, for crimes occurring on and subsequent to that date. Specific provisions for theft of hotel, motel, etc., services are provided however in Ala. Code § 13A-8-10 (1980). Ala. Code §§ 34-15-19, -20 (1975) were not repealed by the new criminal code.
 APPENDIX
1. Alaska Stat. § 11.20.480 (1962).
2. Ariz.Rev.Stat. §§ 13-1801, 13-1802 (1978).
3. Ark.Stat.Ann. § 41.2204 (Acts 1975).
4. Cal.Penal Code § 537 (West 1979 amendment).
5. Colo.Rev.Stat. §§ 12-44-101, 12-44-102 (1973).
6. Conn.Gen.Stat. § 53a-119 (7) (Revised 1979).
7. Del. Code Ann. tit. 11, §§ 841, 845 (1974).
8. D.C. Code § 22-1301 (b)(1) (1973).
9. Fla.Stat.Ann. §§ 509.151, 509.161 (West 1972).
10. Ga. Code Ann. §§ 26-1807, 26-1812 (1977).
11. Haw.Rev.Stat. §§ 708-830, 708-831 (1976).
12. Idaho Code §§ 18-3107, 18-3108 (1979).
13. Ill.Rev.Stat. ch. 71 ¶¶ 4a, 4b (1979).
14. Ind. Code § 35-17-5-6 (1), (3) (1976).
15. Iowa Code §§ 714.1, 714.2 (1979).
16. Kan.Stat.Ann. §§ 36-206, 36-207 (1973).
17. Ky.Rev.Stat.Ann. § 514.060 (Baldwin 1975).
18. La.Rev.Stat.Ann. § 21:21 (1) (West 1979).
19. Me.Rev.Stat.Ann. tit. 17-A, § 357 (1964). *Page 1176 
20. Md. Code Ann. Art. 27, §§ 340, 342 (Supp. 1979).
21. Mass.Ann. Laws ch. 140, § 12 (Michie/Law.Co-op 1977).
22. Mich.Comp. Laws Ann. §§ 750.291, 750.292 (1968).
23. Minn.Stat. §§ 327.07, 327.08 (1978).
24. Miss. Code Ann. §§ 75-73-9, 75-73-11 (1972).
25. Mo.Rev.Stat. §§ 570.010 (12), 570.020, 570.030 (1978).
26. Mont. Code Ann. § 45-6-305 (1979).
27. Neb.Rev.Stat. §§ 41-127, 41-127.01, 41-128 (1978).
28. Nev.Rev.Stat. § 205.445 (1957).
29. N.H.Rev.Stat.Ann. §§ 353:7 — 353:10 (Supp. 1979).
30. N.J.Stat.Ann. § 2C:20-8 (1979).
31. N.M.Stat.Ann. § 30-16-16 (1978).
32. N.Y. Penal Law § 165.15 (McKinney 1975).
33. N.C.Gen.Stat. § 14-110 (1969).
34. N.D. Cent. Code §§ 12.1-23-03, 12.1-23-05 (1976).
35. Ohio Rev. Code Ann. § 2913.41 (Page 1975).
36. Okla.Stat. tit. 21, § 1503 (1971).
37. Or.Rev.Stat. § 164.125 (1977).
38. Pa.Cons.Stat.Ann. tit. 18, § 3926 (Purdon Supp. 1978).
39. R.I.Gen. Laws § 11-18-26 (1956).
40. S.C. Code §§ 45-1-50, 45-1-60, 45-1-70 (1976).
41. S.D. Codified Laws §§ 22-1-2 (41), 22-30A-8, 22-30A-17 (1979).
42. Tenn. Code Ann. § 62-707 (1976).
43. Tex. Penal Code Ann. tit. 7, § 31.04 Vernon 1974).
44. Utah Code Ann. § 76-6-409 (Amend. 1973).
45. Vt.Stat.Ann. tit. 13, § 2582 (1974).
46. Va. Code § 18.2-188 (Supp. 1980).
47. Wash.Rev. Code § 19.48.110 (1979).
48. W.Va. Code § 61-3-40 (1977).
49. Wis.Stat. § 943.21 (1977).
50. Wyo.Stat. §§ 6-7-501, 6-7-502 (1977).
 *Page 171